CAROLINA CASUALTY COMPANY y GERHARD LAHME, demandantes y recurridos, *v.* ARNALDO GUZMÁN BELAVAL, demandado reconvencionante y recurrente.

*Número:* 529     *Resuelto:* 29 de marzo de 1963

*Vicente Géigel Polanco* y *Vicente Géigel Lanuza,* abogados del recurrente; *F. Fernández Cuyar,* abogado de la Carolina Casualty Company; *Rafael Martínez Álvarez, Jr.,* y *Alex González,* abogados de Gerhard Lahme.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Rigau y Dávila.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

Los hechos son en extremo sencillos. El demandado conducía su automóvil por la Calle Santa Cecilia de Ocean Park en dirección Sur. Antes de cruzar la Calle Cacique se detuvo; miró a ambos lados. Observó un vehículo que se aproximaba por la Calle Cacique en dirección Oeste y estimó que podía cruzar. Lo intentó y antes de terminar de hacerlo, el vehículo que discurría por la Calle Cacique lo embistió por la parte lateral izquierda trasera lanzándolo sobre la acera Sur de esa vía haciéndolo chocar con la verja de la casa que

hace esquina. Ambos vehículos quedaron mirando hacia el Este.

La compañía aseguradora del vehículo que discurría por la Calle Cacique indemnizó a su dueño. En unión de éste demandó al conductor del vehículo que cruzaba esa vía. El demandado reconvino. Se declaró con lugar la demanda y sin lugar la reconvención. A instancias del demandado reconvencionante, acordamos revisar la sentencia que le negó indemnización.

■ Ambos conductores fueron negligentes en igual medida. El demandado lo fue porque a pesar de que se detuvo antes de cruzar la vía con derecho de paso preferente y ver que un vehículo se aproximaba, se lanzó a cruzar en vez de esperar que el otro vehículo pasara. Art. 17g, Ley Núm. 279 de 1946—9 L.P.R.A. sec. 187. *Gross* v. *Johnson*, 117 N.W.2d 534 (Neb. 1962). El demandante porque conducía su vehículo según él mismo admite a 30 millas en la zona urbana densamente poblada y no lo hacía guardando el debido cuidado—observando los vehículos que pudieran cruzar la vía por la que transitaba y reduciendo la velocidad en la intersección. Art. 15, Ley Núm. 279 de 1946—9 L.P.R.A. sec. 185. Admite que no vio el vehículo que cruzaba hasta el momento mismo de chocar por lo que no hizo uso de los frenos. Una situación de hechos parecida la consideramos en *Flores* v. *F. & J. M. Carrera, Inc.*, 83 D.P.R. 332 (1961) y determinamos que la responsabilidad del accidente recaía en ambos conductores por igual.[1]

■ En *Conner* v. *McGrew*, 117 N.E.2d 418 (Ill. 1961) se expone la regla, por demás razonable, que impera en situaciones de hechos como la presente, así:

"La regla que establece el grado de cuidado requerido de un conductor que discurre por una carretera con derecho de vía ha sido expuesta infinidad de veces. Las autoridades están acordes

[1] Si bien este accidente ocurrió estando vigente la Ley Núm. 279 de 1946—9 L.P.R.A. sec. 171 *et seq.*—las mismas normas de seguridad imperan bajo la Ley Núm. 141 de 20 de julio de 1960—9 L.P.R.A. sec. 301 *et seq.* —(Suplemento 1962).

en que un conductor en una de estas carreteras no tiene un derecho de vía absoluto e irrestringido que pueda ser ejercitado independientemente de las circunstancias, distancias y velocidades. Dicho conductor no puede proceder ciegamente asumiendo que el otro conductor obedecerá la ley y le cederá el paso, ni proceder imprudentemente hacia lo que constituye un peligro aparente. Por el contrario, recae sobre tal conductor el deber de observar el debido cuidado al acercarse y cruzar la intersección así como de conducir cuidadosamente para evitar una colisión cuando el peligro es aparente o razonablemente debió haber sido descubierto."

Ver además: *Adkins* v. *Coburn*, 362 P.2d 1099 (Okla. 1961); *Bennett* v. *Hall*, 290 P.2d 241 (Colo. 1955); *Clingman* v. *Millerville Mud Sales, Inc.*, 146 So.2d 240 (La. 1962); *Emmco Ins. Co.* v. *Ferraiza*, 127 So.2d 48 (La. 1961).

■ El tribunal de instancia concedió a los demandantes $1,800 de indemnización. Procede determinar ahora la cuantía de los daños sufridos por el demandado. Los diagnósticos finales según constan en la certificación expedida por el Dr. Guzmán López son los siguientes:

"A—Traumatismo cranioencefálico con
    I—Fractura de cráneo lineal a lo largo de la línea media en región Fronto-Parieto-Occipital.
    II—Hematoma subgaleano en vertex.
B—Fractura completa cerrada, de la clavícula izquierda en la unión medio con el tercio externo.
C—Fractura comprimida de las vértebras 7ma. y 11*ava*.
D—Pequeña fractura lineal del borde antero-superior del cuerpo de la quinta vértebra torácica.
Tratamiento:

A—De tipo conservador desde el punto de vista neurológico.
B—Desde el punto de vista ortopédico le fue aplicado un bendaje [sic] en figura de ocho para inmovilización de la fractura de clavícula.

El paciente mejoró lenta y progresivamente siendo dado de baja del hospital el 31 de octubre de 1959 con instrucciones para ser evaluado periódicamente por nosotros. El paciente ha sido visto y examinado en nuestra oficina en las siguientes fechas,

13 de noviembre de 1959, 3 de diciembre de 1959 y 4 de febrero de 1960.

"El examen neurológico se encuentra dentro de los límites normales a excepción de una Anosmia (pérdida de olfato) residual. Las facultades mentales están claras.

"Consideramos que el paciente ha recuperado de sus lesiones y esperamos que no hayan complicaciones futuras aun cuando debemos decir que existe la posibilidad de las mismas en cualquier traumatismo craneoso en el curso de un año a partir del traumatismo, después del cual son mínimas las posibilidades."

El demandado luego de salir del hospital el 31 de octubre estuvo recluido en su casa hasta el 4 de enero de 1960 cuando regresó a su trabajo en el Departamento de Obras Públicas. Estos daños ameritan una indemnización de $15,000.00.

El juez de instancia en sus determinaciones de hecho concluye que:

". . . el demandado y reconvencionista, además de las fracturas, contusiones, padecimientos físicos y angustias mentales resultantes del accidente, (²) tuvo los siguientes gastos:

| | |
|---|---|
| 1—Pago al Hospital Presbiteriano.......... | $822. 00 |
| 2—Servicios prestados por el ortopeda Dr. Karl Horn ............................... | 245. 00 |
| 3—Servicios prestados por el neuro-cirujano Dr. M. Guzmán López................. | 200. 00 |
| 4—Compensación correspondiente a ausencia del trabajo desde el 14 de octubre de 1959 hasta el 4 de enero de 1960.............. | 1, 484. 93 |
| 5—Pérdida del automóvil 'Pontiac' que fue tasado en $1,600.00 y vendido en $300.00.... | 1, 300. 00 |
| Total...... | $4, 051. 00" |

En total, el demandado tiene derecho a ser indemnizado por los demandantes reconvencionados en la suma de $19,051.93. Como ambos conductores fueron responsables por igual, pro-

---

(²) Aun en los casos en que se desestima la acción, es aconsejable que los tribunales de instancia valoren los daños sufridos a los fines de ayudar a este Tribunal en la disposición de casos como el presente en que se deja sin efecto la determinación de que no existe responsabilidad.

cede reducir la compensación del demandante a la suma de $900, eliminando la concesión de honorarios de abogado, y la de los demandados a la suma de $9,525.96.  Por lo que los demandantes deben pagar al demandado la cantidad de $8,625.96.

*Se modificará la sentencia recurrida en estos términos.*

