En el Tribunal Supremo de Puerto Rico

| Jorge L. Montalvo Feliciano et als<br>      Demandante-Recurridos<br><br>      .V<br><br>Saturnino Cruz Concepción, et als<br><br>      Demandados–Peticionarios | Certiorari<br><br>TSPR–98–7 |
| --- | --- |

Número del Caso: CE-91-410, CE-91-422 y CE-91-807 (Cons.)

Abogados Parte Demandante: Lic. José Héctor Vivas (CE-91-410)

Lic. Juan A. Ramos Díaz  del Bufete Cobián & Ramos (CE-91-807)

Lic. Jaime V. Biaggi del Bufete Biaggi Busquets & Mari Roca (CE-91-422)

Abogados Parte Demandada: (CE-91-410)
Lic. Relín Sosa Ramírez
Lic. Waldo Santiago Irizarry
Lic. Juan José Nolla Amado
Lic. Francisco J. Cobián
Lic. Jaime V. Biaggi

(CE-91-422)
Lic. Waldo Santiago Irizarry
Lic. Relín Sosa Ramírez
Lic. Juan José Nolla Amado
Lic. José Héctor Vivas
Lic. Juan A. Ramos Díaz

(CE-91-807)
Lic. Jaime Biaggi
Lic. Waldo Santiago
Lic. José H. Vivas
Lic. Relín Sosa Ramírez
Lic. Juan J. Nolla Amado

Abogados Parte Interventora:

Tribunal de Instancia: Superior, Sala de Aguadilla

Juez del Tribunal de Primera Instancia: Hon. Antonio R. Barceló Moreno

Tribunal de circuito de Apelaciones:

Juez Ponente:

Fecha: 2/4/1998

Materia: Daños y Perjuicios

Este documento constituye un documento oficial del Tribunal
Supremo que está sujeto a los cambios y correciones del
proceso de compilación y publicación oficial de las
decisiones del Tribunal. Su distribución electrónica se hace
como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Jorge L. Montalvo Feliciano,
et als

    Demandantes-recurridos

       v.

Saturnino Cruz Concepción,
et als

    Demandados-peticionarios

CE-91-410

Certiorari

-------------------------------

Luz María Mejías, et als

    Demandantes-recurridos

       v.

Saturnino Cruz Concepción,
et als

    Demandados-peticionarios

CE-91-422

Certiorari

-------------------------------

Ochoa Fertilizer Corp.,
et als

    Terceros demandantes

       v.

Puerto Rican American Ins.
Co.

    Tercera demandada

CE-91-807

Certiorari

-------------------------------

Opinión del Tribunal emitida por el Juez Asociado
señor Negrón García

En San Juan, Puerto Rico, a 4 de febrero de 1998

Manejar un vehículo de motor implica ciertos riesgos, entre los cuales están los asociados con las condiciones de la carretera, visibilidad, velocidad, destreza de otros con-ductores y el tipo de vehículo de motor. Este recurso nos permite concienciar y enfatizar sobre el deber que tienen los conductores de vehículos pesados que transportan mercancía, de que éstos no sólo estén en condiciones adecuadas, sino que observen rigurosamente los límites de tara (peso), para lo cual fueron diseñados en aras de la seguridad personal, el

mantenimiento y la preservación de las vías públicas.

I

Este drama judicial se inició el 8 de enero del 1987. Saturnino Cruz Concepción, acompañado de su hijo Rafael Cruz Batista, se dirigió en horas de la mañana, desde Quebradillas hacia Ochoa Fertilizer Corp. (Ochoa), en Guánica. Conducía un camión de tipo plataforma, modelo Ford 1977, tablilla 7038HP, propiedad de Miguel Mercado Estremera, asegurado con la Corporación Insular de Seguros. **El camión carecía de reflectores en la parte posterior de la plataforma. Sus luces traseras estaban opacas, una más que la otra**. Iba a recoger una carga de fertilizantes en Ochoa para ser entre-

gados en unas fincas de la Autoridad de Tierras en Barcelo-neta.  Anteriormente a ésto, Cruz Concepción había hecho aproximadamente veintiocho (28) viajes con igual propósito.

Al llegar a Ochoa aproximadamente a la 1:30 de la tarde, previa autorización de Luis Vázquez, supervisor de despacho, empleados de Ochoa procedieron a cargar el camión con **400 quintales (40,000 libras)** del fertilizante urea, lo que representó **27,200 libras en exceso de su carga máxima autori-zada**. **La carga fue cubierta con una lona encerada de color oscuro y opaco**.  A eso de las 3:30 p.m., el camión salió de regreso hacia Quebradillas por la carretera Núm. 2.  En las proximidades de Sábana Grande, el camión perdió una pieza de la parte superior del tubo del silenciador; en Mayagüez, se le ajustó la batería, así como el manto protector.[1]

---

[1] En esta ocasión, el Policía Milton Torres llegó hasta el camión y le ofreció asistencia a los ocupantes.

Aproximadamente a las 7:00 p.m., antes de llegar a la cuesta del sector "La Cadena", el camión comenzó a confrontar desperfectos mecánicos con el sistema de transmisión manual. Cruz Concepción detuvo el camión en uno de los dos carriles en dirección hacia Aguadilla y por instrucciones del Policía Milton Torres,[2] lo estacionó fuera de la carretera. Informó al agente que de no poder solucionar el problema, solicitaría ayuda y **dejaría el camión en ese lugar**. Hallaron una manga suelta y la conectaron. **El camión reinició la marcha a una velocidad aproximada de ocho (8) a diez (10) millas por hora (m.p.h.)**.

Ese mismo día, los recién casados Jorge L. Montalvo Feliciano y Marisel Burgos Mejías regresaban de su luna de miel. Arribaron a las 9:30 p.m. al Aeropuerto Eugenio María de Hostos en Mayagüez, donde fueron recibidos por algunos familiares, a saber, Nilda Feliciano (madre de Jorge); Nereida Feliciano (tía); Iris Mejías (madre de Marisel) y por el menor Jorge Burgos Mejías. Todos abordaron el vehículo Chevrolet, Nova, 1977, tablilla 51R152, propiedad de Iris Mejías, asegurado con una póliza expedida por la Puerto Rican American Insurance Co. (PRAICO). Montalvo Feliciano ocupó el asiento del conductor y a su lado estaban su esposa Marisel y suegra Iris; en el asiento posterior, se acomodaron los demás ocupantes.[3] Emprendieron el viaje de regreso hacia Aguadilla, donde todos residían.

---

[2] Dicho oficial había socorrido previamente a Cruz Concepción cuando el camión se detuvo en Mayagüez.

[3] Nilda Feliciano, detrás del conductor; Nereida en el centro y el menor detrás del asiento del pasajero.

Cerca del kilómetro 123.6 de la Carr. Núm. 2, el camión conducido por Cruz Concepción, discurría por el carril dere-cho en dirección sur a norte, esto es de Mayagüez hacia Aguadilla. En esa área, la vía consta de cuatro carriles, -dos en cada dirección- y una isleta central que separa ambas direcciones. **Para entonces no existía alumbrado público y la velocidad máxima permitida era de 55 m.p.h.** Simultáneamente y en orden sucesivo iban por el mismo carril derecho: una grúa, manejada por Luis Morales, a una velocidad de 40 a 45 m.p.h., y el vehículo conducido por Montalvo Feliciano, a una velocidad de 45 m.p.h. La grúa tenía encendidas unas luces reflectoras color ámbar, ubicadas en la capota, y el vehículo de Montalvo Feliciano, mantenía una distancia aproximada de dos y medio carros. Así las cosas, cerca de las 10:00 p.m., **mientras subía una empinada cuesta** en el kilómetro 123.6[4], un acompañante alertó a Morales sobre la presencia del camión. Este logró desviar la grúa hacia la izquierda, y evitó así el impacto. **Desafortunadamente, Montalvo Feliciano continuó e impactó violentamente la parte posterior del camión e incrustó su automóvil debajo de la plataforma de éste, que era manejado por Cruz Concepción**. **En el aparatoso accidente fallecieron Marisel Burgos Mejías e Iris Mejías; los otros pasajeros sufrieron severas lesiones**.

II

Por estos hechos, Montalvo Feliciano, los otros ocupan-tes del vehículo, así como familiares de las víctimas, ins-taron demandas ante el entonces Tribunal Superior, Sala de Mayagüez contra Cruz Concepción; Mercado Estremera; Corpo-ración Insular de Seguros; la Autoridad de Tierras y Ochoa. Reclamaron resarcimiento por los daños sufridos. Posterior-mente Ochoa formuló demanda de tercero contra PRAICO. Todos éstos negaron responsabilidad.

---

[4] Frente al hoy Estadio de Béisbol Juan "Canena" Márques y al Parque Acuático Las Cascadas.

El 3 de junio del 1991 el Tribunal Superior, Sala de Mayagüez (Hon. Antonio R. Barceló), previa vista evidenciaria en la que recibió abundante prueba testifical, pericial y documental[5] -fotos del accidente-, resolvió en sus méritos el aspecto de la negligencia. Mediante una elaborada y analítica resolución, el ilustrado foro impuso negligencia concurrente a ambos conductores: un setenta y cinco por ciento (75%) de responsabilidad a los demandados Cruz Concep-ción, Mercado Estremera, Corporación Insular de Seguros y Ochoa Fertilizer.[6] El restante veinticinco por ciento (25%) de responsabilidad lo adjudicó al conductor del auto, Montalvo Feliciano; la dueña del vehículo, Iris Mejías (fallecida)[7] y su aseguradora (PRAICO). Señaló para una fecha posterior la vista para recibir prueba de los daños. Inconformes los demandados originales,[8] así como PRAICO,[9] recurrieron ante nos. Cuestionan los grados de responsabili-dad impuestos.

---

[5] Los demandantes presentaron como testigos a los co-demandados Cruz Concepción y Mercado Estremera, al Policía Torres, a Morales, chofer de la grúa, a José López Rodríguez, Rafael Cruz Batista y al ingeniero y abogado, Jaime Rivera Torres, especialista en investigación, evaluación y reconstrucción de accidentes. Por los co-demandados Cruz Concepción, Mercado Estremera y su aseguradora, Corporación Insular de Seguros, testificaron el Policía José A. Ruiz Cabán, el Sgto. de la Policía William Vale y al Ingeniero Eric D. Cintrón, especialista en investigación, evaluación y reconstrucción de accidentes. La co-demandada Ochoa presentó a los testigos Pacheco Cintrón y Juan M. Aguayo Navarro, éste último como especialista en investigación, evaluación y reconstrucción de accidentes.

Los litigantes estipularon, que de sentarse a declarar los demandantes que viajaban en el vehículo el día del accidente, su testimonio sería al efecto de no recordar nada de los hechos relacionados con la ocurrencia del evento dañoso.

[6] La acción contra la Autoridad de Tierras fue desestimada antes, mediante Sentencia Parcial del 12 de mayo del 1988.

[7] Es "... regla general reconocida en esta jurisdicción, que la negligencia del conductor no puede imputarse a un pasajero." Pacheco v. Pomales, 55 D.P.R. 341, 345 (1939); Flores v. F. & J.M. Carreras Inc., 83 D.P.R. 332, 333 (1961) según citado en La menor Nilda M. Vélez v. Amaro Cora, res. 10 de abril del 1995.

La responsabilidad de la fenecida Iris Mejías no estuvo predicada en su condición de pasajera al momento del acci-dente y sí, como dueña del vehículo y por haber autorizado a Montalvo Feliciano a conducirlo. Así lo dispone la sec. 13-101 de la Ley de Vehículos de Tránsito, 9 L.P.R.A. sec. 1751:

> "**El dueño de cualquier vehículo de motor será responsable de los daños y perjuicios que se causen mediante la operación de dicho vehículo**, interviniendo culpa o negligencia, **cuando el referido vehículo sea operado** o esté bajo el control físico y real de cualquier persona que, con el fin principal de operarlo, o de hacer o permitir que el mismo sea operado por tercera persona, obtenga su posesión **mediante autorización expresa o tácita del dueño**. (Enfasis suplido).

Véase, Nieves Vélez v. Bansander Leasing Corp., res. 2 de septiembre del 1994; McGee Quiñones v. Palmer, 91 D.P.R. 464 (1964).

[8] Sostienen, que erró el tribunal de instancia al imponerles un 75% de la negligencia y que el foro sentenciador hizo determinaciones fácticas no sostenidas por la prueba.

[9] En su alegato señala como único error que: "[i]ncidió el tribunal de instancia al imponer responsabilidad en un 25% a los asegurados de PRAICO, Jorge L. Montalvo e Iris Mejías Vda. de Burgos, sin que desfilara prueba alguna que permitiera al tribunal tan siquiera inferir tal negligencia."

III

La responsabilidad civil, derivada de actos u omisiones culposas o negligentes se rige por el Art. 1802 de nuestro Código Civil. 31 L.P.R.A. sec. 5141.[10] Gierbolini v. Employers Fire Ins. Co., 104 D.P.R. 853 (1976); Valle v. Amer. Inter. Ins. Co., 108 D.P.R. 692 (1979); Elba A.B.M. v. U.P.R. 125 D.P.R. 294 (1990); J.A.D.M. v. Centro Comercial Plaza Carolina, res. 19 de febrero del 1993. Para que exista esa responsabilidad, es necesario que ocurra un daño, una acción u omisión negligente y la correspondiente relación causal entre el daño y la conducta culposa o negligente. Ramírez Salcedo v. E.L.A. res. 19 de marzo del 1996; Tormos Arroyo v. Departamento de Instrucción, res. 13 de marzo del 1996; Monllor Arzola v. Soc. Gananciales, res. 13 de junio

La culpa o negligencia es falta del debido cuidado, esto es, en no anticipar y prever las consecuencias racionales de un acto, o de la omisión de un acto, que una persona prudente habría de prever en las mismas circunstancias. Ramos v. Carlo, 85 D.P.R. 353, 358 (1962). La necesidad de una convivencia social ordenada, impone un deber general de corrección y prudencia en relación con los demás ciudadanos. El acto es ilícito en sentido extracontractual, cuando viola los deberes generales de corrección o conducta correcta, deberes que no están escritos en los códigos pero que representan el presupuesto mínimo sobreentendido del orden de la vida social. Ramos v. Carlo, supra.

"La culpa consiste en la omisión de la diligencia exigi-ble mediante cuyo empleo podría haberse evitado el resultado dañoso". C. Rogel Vide, La Responsabilidad Civil Extracon-tractual, Ed. Civitas, 1976, pág. 90. La diligencia exigible es la que cabe esperar del ser humano medio, el buen pater familias. Si el daño es previsible por éste, hay responsabi-lidad. Si no es previsible, estamos generalmente en presen-cia de un caso fortuito. Jiménez v. Pelegrina Espinet, 112 D.P.R. 700, 704 (1982). Un elemento esencial de la responsa-bilidad por culpa o negligencia es el factor de la **previsibi-lidad y el riesgo involucrado** en el caso específico. El deber de cuidado incluye tanto la obligación de anticipar como la de evitar la ocurrencia de daños, cuya probabilidad es razonablemente previsible. Elba A.B.M. v. U.P.R., supra. El deber de anticipar y prever los daños no se extiende a todo riesgo posible. "Lo esencial es que se tenga el deber de prever en forma general las consecuencias de determinada clase." Ginés v. Autoridad de Acueductos, 86 D.P.R. 518, 524 (1962).

---

[10] Dispone:

"El que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado. La imprudencia del perjudicado no exime de responsabilidad, pero conlleva reducción de la indemnización."

En nuestro ordenamiento, rige la teoría de causalidad adecuada. "No es causa toda condición sin la cual no se hubiera producido el daño, sino la que ordinariamente lo produce según la experiencia general". J. Santos Briz, Derecho de Daños, Ed. Rev. Der. Pvdo., 1963, págs. 215 y ss.; Soc. de Gananciales v. Jerónimo Corp., 103 D.P.R. 127, 134 (1976); Jiménez v. Pelegrina Espinet, supra; Soto Cabral v. E.L.A., res. 21 de abril del 1995; Miranda v. E.L.A., res. 7 de diciembre del 1994. Así pues, "un daño parece ser el resultado natural y probable de un acto negligente, si des-pués del suceso y mirando retroactivamente el acto que se alega ser negligente, tal daño aparece como la consecuencia razonable y ordinaria del acto". Torres Trumbull v. Pes-quera, 97 D.P.R. 338, 343-344 (1969).

De otra parte, la Ley de Vehículos y Tránsito de Puerto Rico, -Núm. 141 del 20 de junio del 1960, según enmendada- 9 L.P.R.A. sec. 301 et seq., reglamenta todo lo concerniente al uso de las carreteras, el manejo de los vehículos de motor y la velocidad. Es principio básico consagrado en dicha ley, que "[l]a velocidad de un vehículo deberá regularse con el debido cuidado, teniendo en cuenta el ancho, tránsito, uso y condiciones de la vía pública. **Nadie deberá guiar a una velocidad mayor de la que le permita ejercer el dominio del vehículo y reducir la velocidad o parar cuando sea necesario para evitar un accidente**." 9 L.P.R.A. sec. 841. (Enfasis suplido). Entre los requisitos básicos exigidos por dicha ley se destacan los siguientes: que todo conductor esté física y mentalmente capacitado, además de haber sido autori-zado previamente para ello, 9 L.P.R.A. sec. 651, 653. Res-pecto a los vehículos de motor, es esencial que posean dos (2) luces rojas posteriores, visibles a una distancia no menor de 500 pies; dos reflectores rojos precisamente para facilitar la visibilidad nocturna de sus dimensiones, 9 L.P.R.A. sec 1273, 1277 (a) y que **no transiten sobrecargados por las vías públicas**, 9 L.P.R.A. sec. 1371.[11] **Los fundamentos de este requisito, son evidentes: un vehículo sobrecargado, no funciona con la normalidad deseada, constituye un peligro para los demás conductores y usuarios de la vía, y contribuye a un rápido deterioro de las zonas de rodaje**.

Sobre la velocidad, aunque la ley establece unos límites máximos, la jurisprudencia ha reconocido que ello no signi-fica que el conductor esté autorizado a ir a ese máximo todo el tiempo. Vda. de Villa v. Guerra Mondragón, 107 D.P.R. 418 (1978). Como contraparte, "es ilegal que cualquier persona conduzca un vehículo a una velocidad tan lenta que impida u obstruya el movimiento normal y razonable del tránsito excepto cuando sea necesario una velocidad reducida para una conducción segura,

---

[11] Al respecto durante el año 1978 el Departamento de Obras Públicas promulgó el Reglamento para fijar las dimensiones y pesos máximos de los vehículos y sus cargas autorizadas a transitar por las vías públicas de Puerto Rico.

o por tratarse de una cuesta, o cuando se trate de un vehículo pesado de motor que por necesidad o en cumplimiento de la ley vaya a velocidad reducida." 9 L.P.R.A. sec. 842.

Finalmente, es pertinente recordar que la Ley de Trán-sito, consagra la regla de distancia prudente,[12] a saber, "que el mantenimiento de lo que pueda constituir una 'distancia prudente' se le deja a la persona que conduce el automóvil que sigue al que precede, por ser ella la que puede controlar con mayor facilidad el espacio vacío que debe existir entre ambos vehículos. La misma regla prevalecerá en cuanto al segundo y tercer vehículos de ser tres los vehículos que transitan en orden sucesivo." Sociedad de Gananciales v. Pérez González, 90 D.P.R. 194, 195-196 (1964).

Con este trasfondo estatutario y doctrinario en mente, analicemos el ámbito de negligencia.

IV

De entrada, están presentes todos los elementos de una causa de acción válida bajo el Art. 1802: daño, conducta culposa o negligente y relación causal entre ambos.

_____

[12] Reza:

> "Todo conductor se mantendrá a una distancia prudente del vehículo en movimiento que inmediatamente le preceda, de acuerdo con la velocidad y condiciones de la vía pública y demás circunstancias que afecten la seguridad. En todo caso, cuando el límite de la velocidad autorizada para el área fuese mayor de veinticinco (25) millas por hora, dejará espacio suficiente para que cualquier vehículo que lo rebase pueda colocársele al frente con seguridad." 9 L.P.R.A. sec. 1139.

El ilustrado foro sentenciador concluyó en sus determi-naciones de hechos, que la causa próxima principal del accidente fue la negligencia del conductor del camión al manejarlo en las condiciones en que se encontraba, durante la noche, sin tomar las debidas precauciones. Expongámoslas: Primero, la carga máxima autorizada al camión eran 27,200 libras, no obstante **empleados de Ochoa -siguiendo órdenes de un supervisor- lo cargaron con 40,000 libras**, es decir 12,800 libras de sobrepeso. Así lo **admitió** durante la vista el Sr. Miguel A. Pacheco Cintrón, ejecutivo de la empresa.[13] Esta situación, de por sí, constituía un serio impedimento legal para transitar por la vía pública. Ante estas circunstancias, era razonablemente previsible que una sobrecarga del camión **tan sustancial**, reduciría su capacidad de velocidad e impediría su funcionamiento normal y crearía, a su vez, una grave condición de riesgo y peligrosidad. En vista de ello, la responsabilidad de Cruz Concepción es **compartida con Ochoa, que incurrió directamente en negligen-cia al cargar en exceso el camión, e hizo caso omiso de la carga máxima autorizada**. Aunque el foro sentenciador utilizó la figura de contratista independiente para imponerle respon-sabilidad a Ochoa, resolvemos que ésta no es de aplicación, toda vez que su responsabilidad por el daño dimana del acto de sobrecargarlo.

---

[13] También admitió, que no era la primera vez que el camión era sobrecargado. (Resolución, pág. 34)

Segundo, el camión **no tenía reflectores en la parte posterior de la plataforma**, conforme la sec. 6-207 de la Ley de Vehículos y Tránsito, 9 L.P.R.A. sec. 1277.[14] Indudable-mente, este hecho fue determinante y dificultó que no fuera divisado con suficiente anticipación. Tercero, la condición de las luces traseras tampoco eran adecuadas, estaban opacas, **lo que disminuía significativamente su visibilidad**. Cuarto, debido a las condiciones deterioradas del tubo de escape y silenciador, el camión emitía un denso humo negro. Quinto, el riesgo así creado, aumentó al cubrirse la carga con una lona oscura, **no reflectora**, poco visible. Sexto, **la veloci-dad extremadamente lenta** (8 a 10 m.p.h.) del camión lo con-vertía, para todos los fines prácticos, **en un camión detenido** en plena vía pública, situación que por constituir un grave riesgo está prohibida por la ley. 9 L.P.R.A. sec. 842. Recuérdese, que esta lentitud fue parte del incumplimiento de la ley, **consecuencia natural del sobrepeso del camión y no una necesidad o medida cautelar para una conducción segura**.

Todos estos factores analizados en conjunto, a juicio del juzgador, propiciaron la ocurrencia del accidente. Ciertamente, transitar dicho camión por la vía de rodaje, creó una condición inminentemente peligrosa para los demás vehículos. Esas conclusiones merecen nuestro aval y no las alteraremos.

De otra parte, el foro de instancia impuso negligencia concurrente a Montalvo Feliciano, conductor del vehículo accidentado. Conforme los hechos, Morales, como chofer de la grúa, logró esquivar el camión haciendo un viraje súbito hacia el carril izquierdo. A pesar de que el automóvil conducido por Montalvo Feliciano iba a una velocidad menor que la permitida, **el tribunal estimó que la distancia de dos y medio carros de la grúa no era prudente**. Coincidimos, pero estimamos que la proporción en negligencia debe aumentarse a cincuenta (50%) por ciento. Veamos.

Según expresado, el concepto de "distancia prudente" consagrado en la Ley de Tránsito, "le deja a la persona que conduce el automóvil..., por ser ella la que puede controlar con mayor facilidad el espacio vacío que debe existir entre ambos vehículos." Sociedad de Gananciales v. Pérez González, supra. Reiteramos, que la exigencia contenida en la Ley de Tránsito, a los fines de que la distancia debe ser la que permita a otro vehículo colocarse al frente con seguridad. La velocidad a que se transite, y al conductor reducir y detenerse totalmente -de ser necesario- para evitar un posible accidente.

Es evidente que la distancia observada por Montalvo Feliciano no fue suficiente, pues no pudo esquivar el camión, como lo hizo el chofer de la grúa. Resulta improbable que a una velocidad de 45 m.p.h. y aproximadamente dos y medio carros de distancia, hubiese podido hacerlo. Ante estas

---

[14] "Todo vehículo de motor y arrastre, deberá llevar en su parte posterior, dos (2) reflectores rojos ... para indicar el ancho del vehículo." En la actualidad, dicho requisito permanece intacto, pero durante el 1995, dicha sección fue enmendada para requerir la instalación de líneas reflectivas en toda la extensión de los parachoques frontales y posteriores.

circunstancias, "[e]ra su obligación ir atento a la carretera y de los demás automóviles que por ella transitaban. Es deber de todo conductor mantener el vehículo que conduce bajo constante control en todo momento, de suerte que pueda detener con tiempo su marcha si de pronto surge una situación de emergencia." Brazee v. Wise, 83 D.P.R. 179, 183 (1961).

El examen de las fotografías confirma, que aunque Montalvo Feliciano conducía el vehículo a una velocidad menos que la permitida, **no guardaba una distancia prudente de la grúa**, lo que propició que el automóvil quedara totalmente incrustado debajo de la plataforma del camión. Ello le impidió que pudiera frenar a tiempo o con seguridad, cambiar de carril y evitar el impacto. El conductor Montalvo Feli-ciano fue negligente al no tomar las medidas de precaución necesarias y no actuar como un hombre prudente y razonable que, en circunstancias normales, hubiese reaccionado: guar-dando distancia, frenando o desviando el automóvil hacia otro carril. Cf. Banchs v. Colón, 89 D.P.R. 481 (1968).

Por último, la aseguradora PRAICO intenta establecer que el causante del accidente fue el conductor de la grúa, Luis Morales, por mantener encendidos los biombos color ámbar sin acarrear ningún vehículo. Aparte de que los hechos expuestos derrotan esa contención, pretender en esta etapa del litigio imponerle responsabilidad a quien no fue ni es parte y, contra quien no se ha presentado ninguna reclamación, es improcedente. Véase, Torres v. A.F.F., 94 D.P.R. 314, 318 (1967). La participación de Morales se limitó a ser testigo durante la vista evidenciaria en instancia. **Además ante el supuesto propuesto, de que el reflejo de las luces de la grúa efectivamente disminuía la visibilidad de Montalvo Feliciano, muy bien pudo éste distanciarse de la grúa o simplemente cam-biar de carril. No optó por ninguna de estas alternativas**.

Por los fundamentos expuestos, modificaremos en cincuenta (50%) por ciento la adjudicación y proporción de los respectivos grados de negligencia. Así modificada, se confirma la resolución recurrida y devolvemos los autos ori-ginales al tribunal de instancia para la continuación de los procedimientos de manera consistente con lo aquí resuelto.

Se dictará la correspondiente sentencia.


ANTONIO S. NEGRON GARCIA
Juez Asociado

**EN EL TRIBUNAL SUPREMO DE PUERTO RICO**

| | | |
|---|---|---|
| Jorge L. Montalvo Feliciano, et als | ' | |
| Demandantes-recurridos ' | CE-91-410 | |
| v. | ' | |
| | ' | Certiorari |
| Saturnino Cruz Concepción, et als | ' | |
| Demandados-peticionarios ' | | |

------------------------------'

| | | |
|---|---|---|
| Luz María Mejías, et als | ' | |
| Demandantes-recurridos ' | CE-91-422 | |
| v. | ' | |
| | ' | Certiorari |
| Saturnino Cruz Concepción, et als | ' | |
| Demandados-peticionarios ' | | |

----------------------------'

| | | |
|---|---|---|
| Ochoa Fertilizer Corp., et als | ' | |
| Terceros demandantes ' | CE-91-807 | |
| v. | ' | |
| | ' | Certiorari |
| Puerto Rican American Ins. Co. | ' | |
| Tercera demandada | ' | |

----------------------------'

SENTENCIA

En San Juan, Puerto Rico, a 4 de febrero de 1998

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente se dicta Sentencia y modifica en cincuenta (50%) por ciento la adjudicación y proporción de los respectivos grados de negligencia. Así modificada, se confirma la resolución recurrida y se ordena devolver los autos originales al tribunal de instancia para la continuación de los procedimientos de manera consistente con lo aquí resuelto.

Lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rebollo López emitió Opinión Disidente a la cual se une el Juez Asociado señor Hernández Denton. La Juez Asociada señora Naveira de Rodón disintió sin opinión escrita.

Isabel Llompart Zeno
Secretaria del Tribunal Supremo

**EN EL TRIBUNAL SUPREMO DE PUERTO RICO**

**Jorge L. Montalvo Feliciano, et als.**

> **Demandantes-recurridos**                    **CE-91-410**

> **vs.**                                        **CERTIORARI**

**Saturnino Cruz Concepción, et als.**

> **Demandados-peticionarios**

\----------------------------------

**Luz María Mejías, et als.**

> **Demandantes-recurridos**                    **CE-91-422**

> **vs.**                                        **CERTIORARI**

**Saturnino Cruz Concepción, et als.**

> **Demandados-peticionarios**

\----------------------------------

**Ochoa Fertilizer Corp., et als.**

> **Terceros demandantes**                       **CE-91-807**

> **vs.**                                         **CERTIORARI**

**Puerto Rican American Ins. Co.**

> **Tercera demandada**

\----------------------------------

**OPINION DISIDENTE EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LOPEZ A LA CUAL SE UNE EL JUEZ ASOCIADO SEÑOR HERNANDEZ DENTON**

> **San Juan, Puerto Rico a 4 de febrero de 1998**

Un análisis de la decisión mayoritaria que emite el Tribunal en el presente caso deja perplejo al lector de la misma. Desde un punto de vista estrictamente doctrinario, la decisión emitida es una correcta. De otra parte, la relación que de los hechos relevantes se hace es una completa e impresionante. El error se comete al aplicar la doctrina a esos hechos; error que, naturalmente, induce al Tribunal al resultado equivocado, e injusto, al que llega.

Dicho con respeto, y por más esfuerzo que hemos hecho, no comprendemos cómo la Mayoría le impone un cincuenta (50) por ciento de negligencia concurrente al demandante Montalvo Feliciano. Somos del criterio que éste no tuvo culpa, o negligencia, alguna en relación con el accidente automovilístico en el que perdió la vida su joven esposa y otra de las personas que viajaban en el vehículo de motor que él conducía.

Conforme surge de la propia Opinión mayoritaria emitida: el accidente en controversia ocurre, en horas de la noche, en una carretera que no contaba con alumbrado alguno; el camión conducido por el codemandado Cruz Concepción no tenía reflectores, o luces, en la parte posterior de la plataforma; el referido camión emitía un denso humo negro; la carga en la plataforma de dicho camión estaba cubierta con una lona oscura; y la velocidad extremadamente lenta a la que transitaba dicho camión, en las propias palabras de la Opinión mayoritaria, "...lo convertía, para todos los fines prácticos, en un camión detenido en plena vía pública..." (énfasis suplido).

Todo lo anteriormente expuesto significa, en palabras sencillas, que dicho camión constituía, para cualquier conductor que transitara esa noche por dicha vía pública, un objeto no visible plantado en el mismo medio de la carretera.

Si a ello le añadimos que la escasa visibilidad que de dicho camión podía haber tenido esa noche el codemandante Montalvo Feliciano estaba aún más afectada por la presencia del vehículo de motor que le precedía —la grúa— no entendemos cómo el Tribunal le puede imponer negligencia alguna a Montalvo Feliciano; sobre todo, un cincuenta (50) por ciento. La mejor evidencia —si es que se necesita alguna más— de que prácticamente el camión constituía un objeto no visible la constituye el hecho de que la grúa que precedía al codemandante Montalvo Feliciano por poco impacta al mismo; no ocurriendo dicha colisión debido al violento viraje que se vio obligado a hacer el conductor de la misma en el último momento.

La mayoría del Tribunal intenta justificar su erróneo proceder expresando que Montalvo Feliciano no actuó "...como un hombre prudente y razonable que en circunstancias normales, hubiese reaccionado: guardando una distancia, frenando o desviando el automóvil hacia otro carril".

Dicho nuevamente con respeto, tal parece que los integrantes de este Tribunal hace mucho tiempo que no conducen un vehículo de motor en

las vías públicas de nuestro País.  Olvida la Mayoría, en primer lugar, su propia determinación a los efectos de que Montalvo Feliciano, no sólo conducía su vehículo a una velocidad bastante menor que la permitida en el sector por el cual transitaba esa noche, sino que éste se mantenía a una distancia aproximada, de la grúa que le precedía, de dos carros y medio; hechos que demuestran que Montalvo Feliciano cumplía, en esos momentos, con todos los requisitos exigidos por la Ley de Vehículos y Tránsito de Puerto Rico.

En segundo término, ignora la Mayoría el normal y lógico proceder de un conductor que observa que el vehículo de motor que le precede, de manera súbita, realiza un radical viraje hacia el lado izquierdo de la carretera.  Lo normal en esas circunstancias es que ese conductor siga con su vista, aun cuando solamente por unos instantes, el radical viraje realizado por dicho vehículo.  Ello con el agravante, en el presente caso, que al retornar su visión hacia el frente de su vehículo, dicho conductor <u>no</u> tenía el tiempo suficiente para esquivar un objeto no visible que estaba detenido en la carretera a todos los fines prácticos.

Ante esas circunstancias, <u>cabe preguntarse</u>: ¿era previsible o anticipable ese hecho para Montalvo Feliciano o para cualquier otro conductor que tuviera la infortunia de transitar esa noche por dicha vía pública?

Somos del criterio que la constestación a dicha interrogante resulta ser obvia.  Nadie puede razonablemente prever o anticipar la presencia de un objeto no visible en el medio de una carretera.  Siendo ello así, <u>no</u> puede imponérsele <u>ninguna</u> clase de responsabilidad a Montalvo Feliciano.  Así lo establecen las propias decisiones nuestras que cita la Mayoría en la exposición doctrinaria que hace.  <u>Ginés</u> v. <u>Autoridad de Acueductos</u>, 86 D.P.R. 518 (1962); <u>Ramos</u> v. <u>Carlo</u>, 85 D.P.R. 353 (1962).

El 8 de enero de 1987, Jorge L. Montalvo Feliciano sufrió una inmensa pérdida, la de su joven esposa.  Hoy, Jorge L. Montalvo

Feliciano es víctima de una grave injusticia. El más alto Foro judicial de su País resuelve que él fue responsable, en un cincuenta (50) por ciento, de la muerte de su esposa; situación y sentimiento que lo acompañará por el resto de su vida.

No podemos permanecer callados ante tan grave injusticia. Es por ello que disentimos.


                    FRANCISCO REBOLLO LOPEZ
                         Juez Asociado