# 2002 DTA 117

### TRIBUNAL DE CIRCUITO DE APELACIONES
### CIRCUITO REGIONAL V DE PONCE Y AIBONITO

JUANA CAMACHO PACHECO POR SI Y EN REPRESENTACION DE SUS
HIJAS MENORES MARISABEL SANTIAGO CAMACHO;
MELANIE SANTIAGO CAMACHO; MIRIAM JORGE OQUENDO
Apelantes

v.

JOSE BESOSA CASTILLO POR SI Y EN REPRESENTACIÓN
DE LA SOCIEDAD LEGAL DE GANANCIALES, ETC.
Apelados

Núm. KLAN-01-00154

San Juan, Puerto Rico, a 10 de julio de 2002

Panel integrado por su Pesidente, el Juez Brau Ramírez,
el Juez Aponte Jiménez y la Jueza Pabón Charneco

Brau Ramírez, Juez Ponente

**TEXTO COMPLETO DE LA SENTENCIA1SENTENCIA**

**I**

La parte apelante, compuesta por Juana Camacho Pacheco, por sí y en representación de sus hijas menores Marisabel y Melanie Santiago Camacho, y Miriam Jorge Oquendo, solicita la revisión de una sentencia emitida el 29 de diciembre de 1999 por el Tribunal de Primera Instancia, Sala de Superior de Ponce, en la demanda sobre daños y perjuicios instada por las apelantes contra los apelados, José Besosa Castillo y la sociedad de bienes gananciales compuesta por él y su esposa Ivelisse Cruz Martínez.

La demanda está relacionada a un accidente automovilístico ocurrido el 25 de mayo de 1995 en la carretera 385 de Peñuelas, entre dos vehículos conducidos por Jeremy Santiago Jorge, causante de las apelantes, y el apelado José Besosa Carrasquillo, mientras participaban en una carrera de autos clandestina en la referida vía pública. El accidente fue provocado cuando un tercer vehículo se interpuso por el carril por el que conducía el apelado y éste lanzó su vehículo contra el de Santiago Jorge.

Mediante la sentencia apelada, el Tribunal de Primera Instancia declaró sin lugar la demanda, por entender que Santiago Jorge había asumido el riesgo del accidente al participar voluntariamente en la carrera.

Revocamos.

**II**

Según surge del recurso, Santiago Jorge, quien residía en Ponce, era hijo de la apelante Miriam Jorge Oquendo. Al momento de los hechos, Santiago Jorge tenía 23 años de edad y estaba casado con la apelante

Juana Camacho, con quien había procreado dos niñas, las también apelantes Marisabel y Melanie Santiago Camacho.

El 25 de mayo de 1995, a eso de las 11:00 de la noche, Santiago Jorge se encontraba departiendo con unos amigos cerca del cine El Emperador en Ponce. El grupo reunido acostumbraba celebrar carreras de carros clandestinas en la calle.

Al lugar se presentó otro grupo de conductores provenientes del área metropolitana, que acudían para participar en las carreras que se realizaban en la zona de Ponce. Entre los conductores estaba el apelado Besosa Castillo.

Este y Santiago Jorge convinieron en celebrar una carrera, para lo que se trasladaron a la carretera 385 del sector Tallaboa de Peñuelas, lugar donde se efectuaban las competencias clandestinas. Dicha carretera consta de sólo dos carriles, uno hacia cada dirección, y se encuentra en un área desolada.

Santiago Jorge y el apelado compitieron en tres ocasiones. Santiago Jorge conducía un vehículo Mazda RX-7 de su propiedad, mientras que el apelado guiaba un auto Honda modelo CRX, del cual era dueño. En todas las competencias o *"pases"*, Santiago Jorge había salido victorioso.

El apelado propuso a Santiago Jorge hacer un cuarto pase, lo cual éste aceptó. En esta competencia, el auto de Santiago Jorge ocupó el carril derecho de la carretera, con el tránsito a su favor, mientras que el apelado conducía su vehículo por el carril izquierdo, en sentido contrario al tránsito.

Los vehículos arrancaron. Santiago Jorge y el apelado conducían sus vehículos cerca de 100 millas por hora, uno justo al lado del otro. En esos momentos, cuando los vehículos de Santiago Jorge y el apelado estaban enfrascados en la competencia, apareció de repente un automóvil que transitaba por el carril por el cual discurría el apelado y que venía en la dirección contraria.

Al percatarse del vehículo que se acercaba, el apelado lanzó su vehículo a la derecha, invadiendo el carril por el que conducía el automóvil de Santiago Jorge e impactando el vehículo de éste. Esto hizo que Santiago Jorge perdiera el control de su vehículo y fuese a chocar con un poste del tendido eléctrico que estaba al borde de la carretera.

Santiago Jorge sufrió lesiones serias y fue llevado en estado grave al Hospital Dr. Pila de Ponce para recibir tratamiento médico de emergencia. Las apelantes Juana Camacho y Miriam Jorge, esposa y madre de Santiago Jorge, fueron informadas de forma separada del accidente, personándose cada una al hospital. Allí presenciaron las condiciones en que se encontraba Santiago Jorge.

En vista de su estado, Santiago Jorge fue traslado por ambulancia aérea al Centro Médico de Río Piedras, donde murió poco más tarde.

Oportunamente, las apelantes instaron la presente acción de daños y perjuicios contra el apelado, imputándole responsabilidad por la muerte de Santiago Jorge y reclamándole la indemnización de los daños sufridos por éstas.

El apelado contestó la demanda, negando las alegaciones.

Luego de varios trámites, el Tribunal de Primera Instancia celebró la vista en su fondo.

La parte apelante presentó el testimonio del señor José Rafael Brito Beascochea, amigo de Santiago Jorge y

testigo presencial del accidente ocurrido. Este declaró sobre las circunstancias en que se dieron los eventos la noche del incidente, incluyendo los pormenores sobre el choque entre los dos vehículos. Las apelantes Juana Camacho y Miriam Jorge también testificaron sobre los daños sufridos.

El apelado no presentó más prueba, dando el caso por sometido.

El 29 de diciembre de 1999, el Tribunal emitió la sentencia apelada declarando sin lugar la demanda. El dictamen no incluyó determinaciones de hechos y conclusiones de derecho.

Contra esta sentencia, las apelantes presentaron oportunamente una moción de reconsideración, la cual fue denegada.

Insatisfechas, las apelantes acudieron ante este Tribunal.

Mediante resolución del 21 de marzo de 2002, instruimos al foro apelado a que procediera a formular las determinaciones de hechos y conclusiones de derecho correspondientes, a fin de revisar su sentencia. La distinguida Sala apelada respondió diligentemente a nuestro pedido mediante una resolución emitida el 13 de mayo de 2002.

En sus determinaciones, el Tribunal de Primera Instancia concluyó que Santiago Jorge se había sometido voluntariamente a una situación peligrosa para él, al participar en una carrera ilegal de automóviles en una vía totalmente inapropiada para dicho evento. La Sala apelada concluyó que el causante de las apelantes había actuado a riesgo propio. Aunque el Tribunal reconoció que el apelado también había participado en dicho evento, razonó que *"el grado de consentimiento prestado por el fallecido para participar en el evento ilegal antes referido es tal que releva a dicho demandado de responsabilidad."*

### III
En su recurso, las apelantes plantean que el Tribunal de Primera Instancia erró al desestimar su demanda.

Según se conoce, en nuestra jurisdicción, la responsabilidad civil resultante de actos u omisiones culposas o negligentes está regida por el Artículo 1802 del Código Civil, 31 L.P.R.A. sec. 5141. Dicho precepto establece que el que por acción u omisión cause daño a otro, mediante culpa o negligencia, viene obligado a reparar el daño causado. El artículo añade que la imprudencia concurrente del perjudicado no exime de responsabilidad, pero conlleva la reducción de la indemnización.

El Tribunal Supremo de Puerto Rico ha aclarado que para que exista responsabilidad bajo dicho precepto, es necesario que concurran los siguientes elementos: (1) un daño, (2) una acción u omisión negligente, y (3) la relación causal entre el daño y la conducta culposa o negligente. *Montalvo v. Cruz,* 144 D.P.R. 748, 755 (1998); *Toro Aponte v. E.L.A.,* 142 D.P.R. 464, 473 (1997); *Elba A.B.M. v. U.P.R.,* 125 D.P.R. 294, 308 (1990).

La culpa o negligencia consiste en la omisión de aquella diligencia que exija la naturaleza de la obligación, correspondiendo tal diligencia a las circunstancias de las personas, del tiempo y del lugar. La diligencia exigible en estos casos es la que correspondería ejercitar a un buen padre de familia o un hombre prudente y razonable. *Toro Aponte v. E.L.A.,* 142 D.P.R. a la pág. 473; *Elba A.B.M. v. U.P.R.,* 125 D.P.R. a la pág. 309.

El deber de cuidado impone tanto la obligación de anticipar, como la de evitar, la ocurrencia de daños cuya probabilidad es razonablemente previsible, y no se limita a anticipar solamente el riesgo preciso o las consecuencias exactas de determinada conducta. *Montalvo v. Cruz,* 144 D.P.R. a la pág. 756; *Ginés Meléndez v. Autoridad de Acueductos,* 86 D.P.R. 518, 524-525 (1962). No se responde, sin embargo, por acontecimientos que no son razonablemente previsibles, es decir, por sucesos fortuitos. *Toro Aponte v. E.L.A.,* 142 D.P.R. a la pág.

473.

Para determinar si una omisión es generadora de responsabilidad, se considera: (1) la existencia o inexistencia de un deber jurídico de actuar por parte del alegado causante del daño, y (2) si de haberse llevado a cabo el acto omitido, el daño se hubiera evitado. *Toro Aponte v. E.L.A.*, 142 D.P.R. a la pág. 474.

En nuestro ordenamiento rige la teoría de causalidad adecuada para determinar responsabilidad por los daños bajo el citado artículo 1802. Según dicha doctrina, *"no es causa toda condición sin la cual no se hubiera producido el resultado, sino la que ordinariamente lo produce según la experiencia general"*. *Montalvo v. Cruz*, 144 D.P.R. a la pág. 756; *Soc. de Gananciales v. Jerónimo Corp.*, 103 D.P.R. 127, 134 (1974).

Si el daño se debe a la conducta de más de una persona, todos responden civilmente ante el perjudicado, como cocausantes del daño, de acuerdo a sus respectivas culpas. Dichos cocausantes del daño son responsables solidariamente frente al perjudicado, sin perjuicio de que en la relación interna entre ellos la obligación se divida de acuerdo a la proporción en que la culpa o negligencia de cada uno contribuyó a la ocurrencia del daño. *Torres Ortiz v. E.L.A.*, 136 D.P.R. 556, 564-565 (1994); *Sánchez Rodríguez v. López Jiménez*, 118 D.P.R. 701, 705-706, n. 2 (1987); *Ramos v. Caparra Dairy, Inc.*, 116 D.P.R. 60, 62-64 (1985).

En cuanto al deber de cuidado que debe observarse en la conducción de vehículos de motor, éste queda delimitado en parte de forma estatutaria, por las disposiciones de la Ley de Vehículos y Tránsito de Puerto Rico. Como se sabe, dicha legislación proscribe conductas específicas y establece normas generales de diligencia para los conductores. Véase, *Montalvo v. Cruz*, 144 D.P.R. a la pág. 757; *Miranda v. E.L.A.*, 137 D.P.R. 700, 708 (1994); *Vda. de Vila v. Guerra*, 107 D.P.R. 418, 424 (1978).

Dicho deber de cuidado está también regulado por la aplicación del principio de previsión y evitación del daño, lo que implica que una conducta puede ser constitutiva de negligencia, independientemente de que no constituya una infracción específica a la Ley de Vehículos y Tránsito. *Molina, Caro v. Dávila*, 121 D.P.R. 362, 371-372 (1988); Véase, *Vélez Rodríguez v. Amaro Cora*, 138 D.P.R. 182, 191 (1995).

La norma general, en cuanto a lo anterior, es que un vehículo de motor no debe ser conducido a una velocidad mayor que la que permita ejercer el debido dominio del vehículo y reducir la velocidad y parar cuando sea necesario para evitar un accidente. *Montalvo v. Cruz*, 144 D.P.R. a la pág. 757; *Miranda v. E.L.A.*, 137 D.P.R. a la pág. 709; *Cárdenas Maxán v. Rodríguez Rodríguez*, 125 D.P.R. 702, 713 (1990); *Vda. de Vila v. Guerra Mondragón*, 107 D.P.R. a la pág. 424; 9 L.P.R.A. sec. 5121.

En la situación de autos, según indicado, la prueba tendió a establecer que ambos conductores involucrados en el accidente estaban participando en una carrera de autos clandestina en una vía pública de rodaje, que durante esta actividad el apelado conducía ilegalmente a gran velocidad por el carril de su izquierda, que el accidente fue provocado cuando un tercero se interpuso en la vía de rodaje en el carril por el que venía el apelado, provocando que éste arrojara su vehículo contra el de Santiago Jorge y lo llevara a chocar contra un poste, ocasionándole la muerte.

La conducta observada por el apelado no sólo violaba la norma básica antes mencionada, sobre el cuidado requerido al transitar por las vías públicas, sino que resultaba ser una infracción a varios preceptos de la Ley de Vehículos y Tránsito, que prohíbe la celebración de carreras de competencias no autorizadas en las vías públicas del país, 9 L.P.R.A. sec. 5127, la conducción de vehículos a velocidades superiores a los límites máximos legales de velocidad, 9 L.P.R.A. sec. 5122, el transitar por la mitad izquierda de la vía de rodaje, salvo situaciones excepcionales, 9 L.P.R.A. sec. 5151, y el cruzar de forma indebida entre carriles, 9 L.P.R.A. sec. 5156.

No cabe duda, en este sentido, que la conducta del apelado en este caso fue extremadamente negligente y que

la misma contribuyó a ocasionar los daños reclamados por las apelantes.

El Tribunal de Primera Instancia, sin embargo, entendió que el apelado no era responsable por los daños sufridos por la parte apelante, porque el occiso Santiago Jorge había consentido a participar en la actividad ilegal.

El consentimiento del perjudicado constituye más bien una defensa en casos en que se reclama responsabilidad por actos torticeros intencionales; por ejemplo, una agresión ocurrida como parte de una actividad deportiva (viz, boxeo). En este tipo de situaciones se entiende que al haber consentido a la conducta de otro que constituya una invasión a la persona o la propiedad, no se puede reclamar por los daños producidos por dicha conducta. Herminio M. Brau del Toro, *Los daños y perjuicios extracontractuales*, 2da edición, Publicaciones J.T. S., San Juan, 1986, a la pág. 163; Dan B. Dobbs, *The Law of Torts*, Volumen 1, West Group, St. Paul, 2001, a la pág. 216; W. Page Keeton, *Prosser and Keaton on The Law of Torts*, 5ta edición, West Publishing, 1984, a las págs. 112-113.

Esta defensa esta amparada en la máxima *volenti non fit injuria*. Bajo esta doctrina, el consentimiento del perjudicado no es un mero eximente de responsabilidad, sino que evita que pueda configurarse la causa de acción, ya que elimina el elemento de ilicitud de la conducta. Dan B. Dobbs, *supra*, a la pág. 222; W. Page Keeton, *supra*, a la pág. 113; Stuart M. Speiser, Charles F. Krause y Alfred W. Gans, *The American Law of Torts*, Volumen 1, CBC, 1983, a las págs. 797-798; véase además, *Rivera Pérez v. Carlo Aymat*, 104 D.P.R.693, 696 (1976).

El consentimiento requerido no se limita a avalar la conducta del otro, sino que tiene que contemplar la invasión o transgresión realizada. El mismo, además, debe de ser genuino, dado en una forma que una persona ordinaria entienda que lo hubo y no puede ser obtenido mediante fraude, fuerza, ilegalmente o por error fundamental. Herminio M. Brau del Toro, *supra*, a la pág. 163; Stuart M. Speiser, Charles F. Krause y Alfred W. Gans, *supra*, a las págs. 799-800.

Esta doctrina ha sido admitida por los países civilistas, como una causa de exención de la responsabilidad civil. Véase José Puig Brutau, *Fundamentos de Derecho Civil*, Tomo II, Volumen III, Bosch, Barcelona, 1983, a la pág. 85; Luis Díez-Picazo y Antonio Gullón, *Sistema de Derecho Civil*, Volumen II, Editorial Tecnos, Madrid, 1994, a la pág. 612; Luis Pascual Estevill, *Derecho de Daños,* Tomo I, 2da edición, Bosch, Barcelona, 1995, a las págs. 534-535; Jaime Santos Briz, *La responsabilidad civil*, Tomo I, Montecorvo, Madrid, 1991, a la pág. 37.

En la situación de autos, sin embargo, entendemos que dicha defensa resulta inaplicable, ya que no está envuelta, como tal, una reclamación por conducta torticera intencional. La responsabilidad del apelado, en este sentido, está fundada en su negligencia al conducir como lo hizo, lo que ayudó a provocar el accidente. Aunque reconocemos que la conducta en cuestión tenía una dimensión *"deportiva"*, los daños reclamados por las apelantes no son inherentes a este tipo de concurso, ni fueron ocasionados intencionalmente durante la actividad, sino que la responsabilidad del apelado está fundada más bien en su falta de diligencia.

Debe reconocerse, además, que este tipo de carreras son específicamente contrarias a la ley, 9 L.P.R.A. sec. 5127, por lo que resultaría contrario a la política pública de nuestra jurisdicción, el admitir que el consentimiento a participar en la misma es una defensa contra una reclamación por daños y perjuicios.

El Tribunal de Primera Instancia también consideró que debía desestimar la demanda, porque Santiago Jorge había asumido el riesgo del accidente.

La asunción de riesgo constituye otra de las defensas reconocidas en el campo de reponsabilidad extracontractual. El Tribunal Supremo de Puerto Rico ha observado que esta figura tiene una doble acepción. La primaria, que constituye una defensa, envuelve situaciones en que el demandado no tenía obligación de cuidado de clase alguna hacia el reclamante o de haberla tenido no la quebrantó. *Urbino v. San Juan Racing Assoc., Inc.,*

141 D.P.R. 210, 218 (1994); *Soto v. Tropigas de P.R.,* 117 D.P.R. 863, 866 (1986); *Colón v. Municipio de Orocovis,* 100 D.P.R. 1009, 1013 (1972); *Viñas v. Pueblo Supermarket,* 86 D.P.R. 33, 37 (1962).

En su sentido secundario, la doctrina de asunción de riesgo se refiere a situaciones donde el demandado ha quebrantado un deber de cuidado, pero el reclamante ha contribuido a su propio daño al asumir voluntariamente el riesgo creado por esta situación. En estos casos, la defensa constituye meramente una aplicación del principio de de la negligencia comparada, expresamente contemplado en el art. 1802 del Código Civil. *Urbino v. San Juan Racing Assoc., Inc.,* 141 D.P.R. a la pág. 218; *Soto v. Tropigas de P.R.,* 117 D.P.R. a la pág. 866; *Viñas v. Pueblo Supermarket,* 86 D.P.R. a la 37. Como tal, no exime de responsabilidad al demandado, aunque sirve para mitigar el monto del resarcimiento que éste viene obligado a prestar, el cual se reduce de forma proporcional a la negligencia del perjurdicado. Herminio Brau del Toro, *supra,* a la pág. 41; *Quiñones López v. Manzano Pozas,* 141 D.P.R. 139, 176, (1996).

En la situación de autos, al igual que el Tribunal de Primera Instancia, consideramos que los actos negligentes realizados por Santiago Jorge contribuyeron de forma sustancial al accidente. Dicha parte, según hemos visto, convino a participar en una carrera ilegal y en la que el apelado discurría ilegalmente por el carril de su izquierda. Al momento del accidente, además, el occiso conducía a gran velocidad al lado del apelado, lo que contribuyó en forma proporcional al resultado.

En estas circunstancias, somos de la opinión que Santiago Jorge fue responsable por el accidente, en la misma proporción que el apelado, esto es, en un cincuenta por ciento (50%). Véase, *Miranda v. E.L.A.,* 137 D.P.R. a la pág. 708; *Molina, Caro v. Dávila,* 121 D.P.R. a la pág. 373; *Carolina Casualty Co.,* 87 D.P.R. 898, 900 (1963); *Acosta Vargas v. Tío,* 87 D.P.R. 262, 270-271 (1963); *Morales Muñoz v. Castro,* 85 D.P.R. 288, 295-296 (1962).

La negligencia de Santiago Jorge es imputable a los apelantes. *Miranda v. E.L.A.,* 137 D.P.R. a la pág. 716; véase, *Vélez Rodríguez v. Amaro Cora,* 138 D.P.R. a la pág. 182.

Por los fundamentos expresados, se revoca la sentencia apelada. En su lugar se dicta sentencia declarando con lugar la demanda y fijando la responsabilidad del apelado en un 50% de los daños provocados a las apelantes. Se devolverá el asunto al Tribunal de Primera Instancia para que éste proceda a la fijación de la compensación a los apelantes, de conformidad con lo aquí resuelto.

Lo pronunció y manda el Tribunal y lo certifica la señora Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General