Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| ERVIN TORRES VELÁZQUEZ<br><br>Apelado<br><br>V.<br><br>ASOCIACIÓN DE GARANTÍAS DE SEGUROS MISCELÁNEOS<br><br>Apelantes | KLAN202401158 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Ponce<br><br>Caso Núm.:<br>J DP2016-0398<br><br>Sobre:<br>Daños y Perjuicios |

Panel integrado por su presidenta; la Juez Lebrón Nieves, la Jueza Romero García y el Juez Rivera Torres[1]

*Lebrón Nieves, Juez Ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 12 de agosto de 2025.

El 26 de diciembre de 2024, compareció ante este Tribunal de Apelaciones, la Asociación de Garantías de Seguros Misceláneos (en adelante, AGSM o parte apelante), mediante recurso de apelación. Por medio de este, nos solicita que, revisemos la *Sentencia* emitida el 29 de octubre de 2024 y notificada el 31 de octubre de 2024, por el Tribunal de Primera Instancia, Sala Superior de Ponce. En virtud del aludido dictamen, el foro *a quo* declaró Ha Lugar la *Demanda* interpuesta por el señor Ervin Torres Velázquez (en adelante, señor Torres Velázquez o parte apelada).

Por los fundamentos que adelante se exponen, se confirma la *Sentencia* apelada.

### I

La controversia de epígrafe tiene su génesis en una *Demanda* sobre daños y perjuicios interpuesta por el señor Torres Velázquez, en contra del señor Norberto Rodríguez Velázquez (en adelante,

---

[1] Panel X – DJ 2024-062C.

Número Identificador

SEN2025 _____

señor Rodríguez Velázquez), Pepsico Caribbean, Co., la compañía de seguros Real Legacy Assurance Company, Inc.[2] (en adelante, Real Legacy). Alegó que, el 2 de junio de 2014, se encontraba caminando por la calle José Gotay del municipio de Peñuelas, Puerto Rico. Cuando se dispuso a cruzar la aludida calle, fue impactado por un vehículo de motor marca Chevrolet, modelo Step Van, año 2002, tablilla 729-774, conducido por el señor Rodríguez Velázquez. El vehículo era propiedad de Pepsico Caribbean, Co. La parte apelada, sostuvo que, debido al impacto del vehículo, sufrió traumas en su cuerpo, en específico, en el brazo y hombro izquierdo, pierna izquierda y glúteos, y que, por ello, tuvo que recibir atención médica en el lugar de los hechos. Indició que, luego fue trasladado a la Sala de Emergencia del Hospital Metropolitano Dr. Tito Mattei de Yauco, donde le realizaron los exámenes físicos necesarios y fue diagnosticado con una fractura en el fémur con desplazamiento mínimo. Más adelante, acudió a recibir tratamiento médico especializado bajo la Administración de Compensaciones por Accidentes de Automóviles (ACAA). Adujo que, había sufrido daños físicos y angustias mentales y emocionales por motivo del accidente, por lo cual exigió una partida económica.

En respuesta, Real Legacy presentó la *Contestación a la Demanda*. Sostuvo que, pese a que admitía que en la fecha y lugar que se alega que el vehículo propiedad de Pepsico Caribean Inc. conducido por el señor Rodríguez Velázquez impactó al señor Torres Velázquez, era necesario aclarar que el conductor del vehículo "miró a ambos lados y no había nadie y no sintió ningún impacto al retroceder lentamente". Alegó, además que, el señor Rodríguez Velázquez no había cometido acto culposo o negligente alguno por

---

[2] Surge de la *Sentencia* que, Real Legacy Assurance Company fue declarada insolvente y sometida a un procedimiento de liquidación, por lo que compareció la Asociación de Garantías de Seguros Misceláneos de Puerto Rico en interés de esta.

el cual tuviese que responder. De igual manera, acotó que, de haber ocurrido el accidente, este fue por la negligencia del señor Torres Velázquez, quien no tomó las debidas precauciones al caminar por el lugar de los hechos, o que, en la alternativa, aplicaba la negligencia comparada.

Transcurridos varios trámites procesales innecesarios pormenorizar, fue celebrada la *Vista en su Fondo* los días 24, 25 y 26 de abril de 2023 y 1 de mayo de 2023. En la vista, compareció el señor Torres Velázquez representado por el Lcdo. Manuel Cobián Roig y el Lcdo. Roberto Figueroa Añeses; y AGSM representada por el Lcdo. René W. Franceschini Pascual. Como parte de la prueba oral de la parte apelada, testificó el señor Torres Velázquez, el señor Rodríguez Velázquez, el perito Dr. Carlos Grovas Badrena, Ortopeda (en adelante, Dr. Grovas Badrena). Por la parte apelante, testificó el señor Rodríguez Velázquez, y el perito Dr. José López Reymundí, Ortopeda (en adelante, Dr. López Reymundí).

Mientras que, la prueba documental admitida y marcada, se basó en lo siguiente:

1. Informe de Accidente de Tránsito #2014-3-1763 preparado por la Policía de Puerto Rico/Informe de Accidente de Tránsito Suplementario #2024-3-057-1763 preparado por la Policía de Puerto Rico.

2. Hoja de Incidente de Servicios de Emergencias Médicas del Cuerpo de Emergencia Médicas Estatal de 2 de junio de 2014.

3. Expediente médico del señor Torres Velázquez en la Sala de Emergencias del Hospital Metropolitano Dr. Tito Mattei de Yauco, P.R.

4. Expediente médico del señor Torres Velázquez ante la ACAA 312-210518-01.

5. Expediente médico del señor Torres Velázquez en la oficina del Dr. Ramón Dávila, cirujano ortopeda.

6. Expediente médico del señor Torres Velázquez en la oficina de la Dra. Evelyn Rivera, Centro Fisiátrico, Santa María, Ponce, P.R.

7. Fotografías del lugar del accidente.

8. Informe de Emergencias Médicas.

9. Informe Pericial del Dr. Grovas Badreña.

10. *Curriculum Vitae* del Dr. Grovas Badrena.

11. *Curriculum Vitae* del Dr. López Reymundí.

12. Informe Pericial del Dr. López Reymundí.

13. Póliza de seguros de Real Legacy Assurance Company.

Así las cosas, el foro de primera instancia emitió la *Sentencia* cuya revisión nos ocupa. Por medio de esta, esbozó las siguientes determinaciones de hechos:

1. El día 2 de junio de 2014 el señor Ervin Torres Velázquez sufrió un accidente al ser impactado por un camión.

2. A la fecha de los hechos el señor Ervin Torres Velázquez tenía 64 años de edad.

3. El camión marca Chevrolet, Mod. Step Van, Año 2002, Tab. 729-778 que impactó al demandante era operado por el Sr. Norberto Rodríguez, quien a su vez era chofer y empleado de Pepsico Caribbean, Inc.

4. La póliza expedida por Real Legacy Assurance Company, Inc. a favor de Pepsico Caribbean Co incluye como vehículo asegurado el camión marca Chevrolet, Mod. Step Van, Año 2002, Tab. 729-778, que estaba siendo conducido por el señor Norberto Rodríguez el 2 de junio de 2014.

5. La póliza expedida por Real Legacy Assurance Company, Inc. aseguraba accidentes como los reclamados en la Demanda.

6. El accidente ocurrió el día 2 de junio de 2014, a eso de las 9:48 de la mañana, mientras el señor Ervin Torres Velázquez se disponía a cruzar la Calle José Gotay, jurisdicción de Peñuelas, Puerto Rico.

7. De la prueba se desprende que el señor Ervin Torres se disponía a cruzar la referida Calle José Gotay, bajando por la rampa de impedidos, para utilizar el cruce de peatones que iba hacia la otra rampa de impedidos que ubicaba directamente en la acera contraria.

8. El día 2 de junio de 2014 el señor Norberto Rodríguez se disponía a entregar mercancía a establecimientos comerciales.

9. En la mañana del 2 de junio de 2014, el señor Norberto Rodríguez había hecho una entrega a un establecimiento comercial y se dirigía a hacer otra entrega de mercancía.

10. El señor Norberto Rodríguez conducía el camión por la Carretera 383, vía que es perpendicular a la Calle José Gotay de Peñuelas.

11. Para hacer la otra entrega, el señor Norberto Rodríguez decidió dar un viraje en reversa desde la Carretera 383, cruzando ésta y continuando la marcha hacia atrás, entrando a la Calle José Gotay.

12. Tanto la Carretera 383, como la Calle José Gotay de Peñuelas, tienen dos carriles con tránsito hac[i]a ambas direcciones.

13. El camión marca Chevrolet, Mod. Step Van, Año 2002, Tab. 729-778 propiedad del codemandado, Pepsico Caribbean Co., que era conducido por el señor Norberto Rodríguez, continuó dando marcha atrás por la Calle José Gotay, impactando al señor Ervin Torres Velázquez.

14. El señor Norberto Rodríguez indicó que no vio al demandante, porque el camión no tenía cámaras de reversa.

15. El señor Norberto Rodríguez indicó que, mientras daba reversa, estaba mirando por el retrovisor izquierdo.

16. El señor Norberto Rodríguez dio reversa al camión en forma de curva, pues estaba haciendo esa maniobra desde la Carretera 383 hacia la Calle José Gotay para el viaje.

17. El conductor Rodríguez reconoció que había un punto ciego –un punto sin visibilidad o "*blind spot*" al conducir el camión en reversa.

18. El conductor, Norberto Rodríguez, reconoció que era importante verificar el punto ciego antes de dar marcha atrás, sin embargo, en esa ocasión no lo hizo.

19. A pesar de estar conduciendo en forma de curva, el conductor Rodríguez nunca vio al señor Torres Velázquez.

20. El señor Rodríguez decidió dar reversa en ese lugar, porque quería entregar una mercancía a otro cliente.

21. Para hacer entrega al otro cliente, el señor Rodríguez reconoció que tenía la alternativa de continuar conduciendo hacia al frente y virar en otro lugar.

22. El conductor admitió no haber visto al demandante en momento alguno, antes del impacto.

23. El señor Norberto Rodríguez no se percató que había impactado al señor Ervin Torres, y no se detuvo hasta que una señora le hizo señas para que se detuviera.

24. El señor Ervin Torres cayó al suelo cuando fue impactado por el camión.

25. El accidente se debió única y exclusivamente a la negligencia desplegada por el conductor del camión, Sr. Norberto Rodríguez.

26. Debido al fuerte impacto, el demandante sufrió serias lesiones físicas, tales como traumas en todo su cuerpo, específicamente en el brazo izquierdo, hombro izquierdo, pierna izquierda y en los glúteos.

27. El demandante se mantuvo tirado en el piso, hasta que llegó la policía y una ambulancia.

28. Mientras estaba esperando la ambulancia, el señor Torres Velázquez confirmó que sentía mucho dolor en el lado izquierdo de su cuerpo.

29. El Agente José Rivera Lugo, placa número 122 de la Policía de Puerto Rico estuvo a cargo de la investigación del accidente.

30. El agente de la policía entrevistó al señor Norberto Rodríguez, y este último reconoció ser el responsable del accidente.

31. El demandante, señor Ervin Torres, fue atendido en el lugar del accidente por personal del Cuerpo de Emergencias Médicas Estatal.

32. El señor Ervin Torres fue trasladado en ambulancia hasta la Sala de Emergencias del Hospital Metropolitano Dr. Tito Mattei de Yauco, donde tuvo que entrar en silla de ruedas.

33. Desde que llegó la ambulancia y fue trasladado al hospital pasó una media hora. Mientras esperaba, el demandante se sentía incómodo con mucho dolor en el brazo izquierdo y en el glúteo izquierdo.

34. En el Hospital Metropolitano Dr. Tito Mattei de Yauco, el doctor Luis Cintrón, médico de Sala de Emergencia, atendió al señor Torres Velázquez. El expediente médico recoge que el demandante sufrió traumas en el brazo, hombro izquierdo, pierna izquierda y glúteos debido a una caída luego de que una "guagua" dando reversa lo impactara. Se recogió en el expediente médico que el demandante tenía un dolor fuerte.

35. En dicha institución, el doctor de Sala de Emergencias ordenó medicamentos, como analgésico intramuscular para el manejo del dolor y se le realizaron estudios de radiografía.

36. En el Hospital Metropolitano Dr. Tito Mattei de Yauco, al demandante se le diagnosticó trauma en la extremidad superior izquierda. El trauma consistió en una fractura del cuello del húmero con desplazamiento mínimo.

37. El demandante estuvo en dicha institución por alrededor de tres horas.

38. Tanto el brazo como el hombro izquierdo del señor Torres Velázquez fueron inmovilizados y se le refirió a la Administración de Compensaciones por Accidentes de Automóviles (ACAA) para continuar tratamiento médico.

39. El demandante fue llevado en ambulancia desde el Hospital Metropolitano Dr. Tito Mattei de Yauco hasta su casa.

40. El señor Torres residía con su madre envejeciente. Ese día el demandante no pudo comer, ni dormir, debido al dolor que tenía en su brazo y glúteo izquierdos.

41. El 4 de junio de 2014, el demandante reportó el caso ante la ACAA. En dicha oficina se cumplimentó un Diagrama del Cuerpo Humano para identifica las áreas que fueron impactadas en el accidente. Se marcaron como áreas impactadas en el lado izquierdo lo siguiente: cabeza, clavícula, hombro, brazo, antebrazo, muñeca, mano, muslo, rodilla, pantorrilla, tobillo, pie y glúteo.

42. El señor Ervin Torres Velázquez recibió tratamiento médico especializado, a través de la ACAA, bajo el Caso #12-210518-01.

43. En la ACAA, fue atendido, en primera instancia, por el Dr. Ramón Dávila, Ortopeda, quien evaluó al demandante y preparó el Informe de Evaluación y Tratamiento de la ACAA y confirmó el diagnóstico de "Fractura Cuello Húmero Izquierdo" y le adaptó un inmovilizador.

44. Como resultado de las lesiones, el señor Torres Velázquez fue referido a la Dra. Evelyn Rivera Ocasio, Fisiatra, quien brindó tratamiento desde el 15 de julio de 2014 hasta el 3 de septiembre de 201 y le dio quince (15) sesiones de terapias físicas en el Centro Fisiátrico Santa María, en Ponce, Puerto Rico.

45. El demandante no podía conducir para recibir sus terapias y tratamiento médico, por lo que era llevado por su hermano. Este, lo ayudaba a entrar al carro y colocarle el cinturón de seguridad, dado

que él no podía por sí mismo, debido al dolor que sufría en su lado izquierdo.

46. El demandante, quien antes del accidente se encargaba de la limpieza de su hogar y el cuidado de su madre, no podía realizar esas labores, posterior al accidente.

47. Durante su tratamiento médico y convalecencia, el demandante no podía limpiar la casa, al no poder barrer, mapear, ni limpiar el patio.

48. A pesar de su condición física, fractura en el brazo izquierdo y dolor, el señor Torres Velázquez continuó cuidando de su madre envejeciente, hasta su muerte.

49. La doctora Rivera Ocasio indicó que, al finalizar las terapias físicas, el demandante continuaba con un arco de movimiento no funcional.

50. El señor Ervin Torres Velázquez continuó su tratamiento médico con el ortopeda, Dr. Ramón Dávila hasta el 15 de septiembre de 2014.

51. El demandante tuvo el brazo inmovilizado por unos tres meses, durante ese tiempo su hermano lo ayudaba a bañarse y a ponerse los pantalones, ya que tenía el brazo inmovilizado.

52. Al presente, el señor Ervin Torres Velázquez continúa sufriendo molestias en su hombro y brazo izquierdo.

53. Previo al accidente, el señor Torres Velázquez no tenía historial de condiciones que afectaran su brazo y lado izquierdo de su cuerpo.

54. El demandante fue evaluado por el Dr. Carlos Grovas Badrena, especialista en ortopedia y evaluaciones de impedimento.

55. El Dr. Grovas Badrena fue cualificado para brindar la opinión pericial, en cuanto a la evaluación médica independiente hecha al demandante, Ervin Torres Velázquez.

56. En la actualidad, el demandante ha alcanzado un grado máximo de beneficio de tratamiento médico, desde el punto de vista músculo esqueletal/ortopédico.

57. El Dr. Grovas Badrena realizó una evaluación médica independiente, incluyendo un examen clínico al demandante.

58. Como parte de su evaluación, el Dr. Grovas Badrena instruyó a que el demandante se hiciera un estudio radiológico en el hombro izquierdo. Este fue realizado con fecha del 1ro de febrero de 2016, y dio como resultado una fractura antigua en el

húmero proximal con cabeza desplazada posterior consolidada y osteopenia por desuso.

59. En la evaluación, el perito realizó medidas comparativas en ambos brazos del demandante, concluyendo que estas arrojan atrofia en la extremidad superior izquierda y cinturón escapulohumeral izquierdo. En cuanto al examen de agarre, la extremidad derecha demostró un agarre de 78 libras, mientras que la izquierda 42 libras. El perito además utilizó un goniómetro para evaluar los movimientos de ambas extremidades superiores, resultando que el hombro izquierdo reflejaba resultados menores, en cuanto a flexión, extensión, abducción, aducción, rotación interna y rotación externa. Ello dio como resultado un MMT de 5/5 en el hombro derecho y de 4/5 en el hombro izquierdo.

60. El Dr. Grovas Badrena concluyó que el demandante tiene un diagnóstico de **"Fractura Cuello Húmero Izquierdo."**

61. El Dr. Carlos Grovas Badrena utilizando como base las Guías para Evaluación de Impedimento Permanente, Sexta Edición, Asociación Médica Americana, Enero 2008- Revisada Abril, 2009, le otorgó al demandante un 7% de impedimento de sus funciones generales, a raíz del accidente objeto de esta reclamación.

62. El impedimento físico del demandante ha afectado su vida diaria.

63. El demandante tiene limitación en su hombro izquierdo, y no puede levantar el brazo hasta arriba. Contrario al movimiento que puede realizar con su brazo derecho.

64. El señor Torres Velázquez, a raíz del accidente, ha sufrido angustias mentales, por no poder atender su madre envejeciente como solía hacerlo. Esto desde el día del accidente, hasta que esta falleció mientras se dilucidada este procedimiento.

65. Al momento de los hechos alegados en la *Demanda*, el señor Torres Velázquez era una persona independiente y autosuficiente.

66. Antes de las lesiones sufridas en el accidente, el demandante se mantenía activo en sus actividades básicas del diario vivir, entre ellas limpiar el hogar, desyerbar el patio, cocinar y asumir el cuidado de su madre.

67. El demandante se ha visto afectado emocionalmente, al verse limitado para realizar un sinnúmero de actividades cotidianas y las necesarias para mantener su hogar. Ahora el demandante depende de terceras personas, no puede conducir, ni salir de la casa. Antes salía dos

o tres veces a la semana, actualmente el señor Torres Velázquez solo sale para sus citas médicas. El demandante tampoco puede hacer los trabajos de carpintería que solía hacer, pues no puede martillar, ni serruchar. Aunque para la fecha del accidente, el demandante sostuvo que no trabajaba formalmente, este hacía "chiripas" como carpintero.

68. Todos esos daños físicos y angustias que ha sufrido el demandante son a consecuencia del accidente en que resultó impactado, de forma negligente por el vehículo antes descrito, el día 2 de junio de 2014.

69. Desde el mismo día del accidente, el señor Torres Velázquez se ha visto afectado en su extremidad superior izquierda.

70. El señor Torres Velázquez sufrió y continúa sufriendo angustias mentales, debido al accidente del 2 de junio de 2014.

71. El accidente ocurrió, única y exclusivamente, por la negligencia del Sr. Norberto Rodríguez, como chofer del vehículo Chevrolet que impactó al demandante.

72. La falta de cuidado, previsibilidad y circunspección del señor Rodríguez fue la causa próxima que provocó el accidente.

73. A la fecha de los hechos, la Compañía Pepsico Caribbean, Inc., era el patrono del conductor y también era el dueño del Vehículo, Chevrolet Step Van del 2002, Tab. 729-778, el cual era conducido por el Sr. Norberto Rodríguez.

74. El camión Chevrolet Step Van del 2002, Tab. 729-778, que conducía el Sr. Norberto Rodríguez y que ocasionó los daños a la parte demandante, estaba asegurado por Real Legacy Assurance Co, bajo la póliza CLP20825309, con límites de $1,000,000.

75. La Asociación de Garantías de Seguros Misceláneos responde por todos los daños sufridos por el demandante en el accidente.

76. El demandante, Ervin Torres Velázquez, no contribuyó en forma alguna a la ocurrencia del accidente donde resultó impactado.

77. El demandante, Ervin Torres Velázquez, posterior al accidente, procuró tratamiento y ha sido diligente en el cumplimiento del mismo.

78. La parte demandada ha obrado con temeridad.

En su *Sentencia*, el foro apelado dispuso lo siguiente:

En consideración a la prueba documental, así como testifical y pericial aportada por las partes, este

Tribunal declara **HA LUGAR** a la Demanda y condena a la parte demandada, **Asociación de Garantías de Seguros Misceláneos de Puerto Rico (AGSM),** a indemnizar al demandante, Ervin Torres Velázquez, en concepto de sus daños físicos, la cantidad de **noventa mil dólares ($90,000.00)** y la partida de **treinta mil dólares ($30,000.00)**, por los sufrimientos y angustias mentales. Todo ello totaliza la suma de **ciento veinte mil dólares ($120,000.00)**. Además, se condena a la parte demandada al pago de las costas, gastos y honorarios de abogados en la suma de **cinco mil dólares ($5,000.00)**. se impone a la parte demandada el pago de los intereses legales al **9.50%**, desde la presentación de la Demanda, según la Regla 44.3 (b) de Procedimiento Civil.

Debido a que los daños sufridos por el Sr. Ervin Torres Velázquez se debieron a la ocurrencia de un accidente vehicular, procede descontar de la compensación la cantidad de $1,000.00, a tenor con la Ley Núm. 138 del 26 de junio de 1968, *supra.*

En desacuerdo, la parte apelante presentó la *Moci[ó]n Solicitando Reconsideraci[ó]n*. El foro apelado emitió *Resolución sobre Reconsideración*, donde declaró No Ha Lugar la solicitud de reconsideración. No obstante, el foro *a quo* reconsideró la partida adjudicada en honorarios por temeridad a la suma de tres mil dólares ($3,000.00).

Aún inconforme, la parte apelante acudió ante este foro revisor y esgrimió los siguientes señalamientos de error:

**Primer error:** Erró el Tribunal de Primera Instancia al concluir que la parte demandada fue negligente.

**Segundo error:** Erró (en la alternativa) el Tribunal de Primera Instancia al concluir que la parte demandada no incurrió en negligencia comparada.

**Tercer error:** Erró el Tribunal de Primera Instancia al conceder una compensación en daños exagerada y desproporcionada.

**Cuarto error:** Erró el Tribunal de Primera Instancia en concluir que la parte demandada fue temeraria y en su consecuencia imponer intereses por temeridad y $3,000.00 por concepto de honorarios de abogado.

El 24 de julio de 2025 compareció la parte apelante por medio de *Alegato en Oposición a Apelación.*

Con el beneficio de la comparecencia de las partes procedemos a resolver.

## II

### A. Deferencia Judicial

Según es sabido, las determinaciones de hechos y de credibilidad del tribunal sentenciador deben ser merecedoras de gran deferencia por parte de los foros apelativos, puesto que, el juzgador de instancia es quien –de ordinario– se encuentra en mejor posición para aquilatar la prueba testifical. *Pueblo v. Hernández Doble,* 210 DPR 850, 864 (2022); *Santiago Ortiz v. Real Legacy et al.,* 206 DPR 194, 219 (2021); *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 770-771 (2013); *Hernández Maldonado v. Taco Maker,* 181 DPR 281, 289 (2011); *SLG Rivera Carrasquillo v. AAA*, 177 DPR 345, 356 (2009). Bajo este supuesto, los foros de primera instancia tienen la oportunidad de oír, ver y apreciar el comportamiento de los testigos. *Pueblo v. Hernández Doble*, supra, pág. 864; *Santiago Ortiz v. Real Legacy et al.*, supra, pág. 219; *Meléndez Vega v. El Vocero de PR,* 189 DPR 123, 142 (2013).

No obstante, la deferencia judicial no es absoluta, pues podrá ser preterida en ciertas instancias. Nuestro Máximo Foro ha reiterado que, los tribunales apelativos no debemos intervenir con las determinaciones ni las adjudicaciones de los juzgadores de primera instancia, salvo que medie pasión, prejuicio, parcialidad o error manifiesto. *Pueblo v. Hernández Doble,* supra, pág. 864; *Santiago Ortiz v. Real Legacy et al.*, supra, pág. 219; *Santiago Montañez v. Fresenius Medical,* 195 DPR 476, 490 (2016); *Dávila Nieves v. Meléndez Marín*, supra, pág. 753; *Rodríguez et al. v. Hospital et al.*, 186 DPR 889, 908-909 (2012); *SLG Rivera Carrasquillo v. AAA*, supra.

Como sabemos, "[l]a tarea de determinar cuándo un tribunal ha abusado de su discreción no es una fácil. Sin embargo, no tenemos duda de que el adecuado ejercicio de discreción judicial está estrechamente relacionado con el concepto de razonabilidad."

*SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 434-435 (2013). Véase, además, *Pueblo v. Rivera Montalvo*, 205 DPR 352, 373 (2020); *Umpierre Matos v. Juelle, Mejía*, 203 DPR 254, 275 (2019), citando a *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000). Es por lo que, nuestra más Alta Curia ha definido la *discreción* como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera." *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023); *Pueblo v. Rivera Montalvo*, supra, citando a *Citibank et al. v. ACBI et al.*, 200 DPR 724, 735 (2018); *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 729 (2016); *SLG Zapata-Rivera v. J.F. Montalvo*, supra, pág. 435, citando a *IG Builders et al. v. BBVAPR*, 185 DPR 307, 338 (2012); *Pueblo v. Rivera Santiago*, 176 DPR 559, 580 (2009). Así, la discreción se "nutr[e] de un juicio racional apoyado en la razonabilidad y fundamentado en un sentido llano de justicia; no es función al antojo o voluntad de uno, sin tasa ni limitación alguna." *Citibank et al. v. ACBI et al.*, supra, citando a *SLG Zapata-Rivera v. J.F. Montalvo*, supra, pág. 435; *HIETel v. PRTC*, 182 DPR 451, 459 (2011); *Santa Aponte v. Srio. del Senado*, 105 DPR 750, 770 (1977). Ello "no significa poder para actuar en una forma u otra, haciendo abstracción del resto del Derecho." *SLG Zapata-Rivera v. J.F. Montalvo*, supra, pág. 435, citando a *Bco. Popular de P.R. v. Mun. de Aguadilla*, 144 DPR 651, 658 (1997); *HIETel v. PRTC*, supra, citando a *Bco. Popular de P.R. v. Mun. de Aguadilla*, supra.

### B. Responsabilidad Civil Extracontractual

Como sabemos, en nuestro ordenamiento jurídico, la responsabilidad civil extracontractual emana del Artículo 1802 del Código Civil -aplicable al caso de autos- que, a tales efectos, dispone que "el que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado". 31

LPRA ant. sec. 5141[3]. *Cruz Flores et al. v. Hosp. Ryder et al.,* 210 DPR 465, 487 (2022); *Colón Santos v. Coop. Seg. Mult. P.R.* 173 DPR 170,177 (2008).   De manera análoga, el Artículo 1536 del Código Civil de Puerto Rico 2020, 31 LPRA sec. 10801 *et seq.,* dispone que la persona que por culpa o negligencia cause daño a otra, viene obligada a repararlo.

Para que prospere una reclamación por daños y perjuicios al amparo del referido precepto legal, se requiere la concurrencia de tres elementos, los cuales tienen que ser probados por la parte demandante: (1) el acto u omisión culposa o negligente; (2) la relación causal entre el acto u omisión culposa o negligente y el daño ocasionado; y (3) el daño real causado al reclamante. *Cruz Flores et al. v. Hosp. Ryder et al.,* supra, págs. 483-484; *Nieves Díaz v. González Massas,* 178 DPR 820, 843 (2010).

El daño constituye el menoscabo material o moral que sufre una persona, ya sea en sus bienes vitales naturales, en su propiedad o en su patrimonio, causado en contravención a una norma jurídica y por el cual ha de responder otra persona.  En nuestro ordenamiento jurídico se reconoce la existencia de dos tipos de daños: los especiales, conocidos como daños físicos, patrimoniales, pecuniarios o económicos, y los generales, conocidos como daños morales. *Nieves Díaz v. González Massas,* supra, pág. 843.

La culpa o negligencia es falta del debido cuidado, esto es, no anticipar ni prever las consecuencias racionales de un acto, o de la omisión de un acto, que una persona prudente habría de prever en tales circunstancias. *Montalvo v. Cruz,* 144 DPR 748, 755 (1998).

Cónsono con lo anterior, a través de la jurisprudencia observamos que un elemento esencial de la responsabilidad civil

---

[3] El derecho aplicable en el caso de epígrafe se remite al Código Civil de Puerto Rico de 1930, puesto que, la presentación de la *Demanda* y los hechos que dan base a esta tuvieron lugar antes de la aprobación del nuevo Código Civil de Puerto Rico, Ley 55-2020, según enmendado.

extracontractual es el factor de la previsibilidad. El deber de previsión no se extiende a todo riesgo posible, pues, es necesario examinar si un daño pudo ser el resultado natural y probable de un acto negligente. *Cruz Flores et al. v. Hosp. Ryder et al.*, supra, pág. 484. Para determinar si el resultado era razonablemente previsible, es preciso acudir a la figura del hombre prudente y razonable, también conocida como el buen padre de familia, que es aquella persona que actúa con el grado de cuidado, diligencia, vigilancia y precaución que exigen las circunstancias. *Nieves Díaz v. González Massas, supra*, pág. 844. Si el daño es previsible por éste, hay responsabilidad; sino es previsible, estamos generalmente en presencia de un caso fortuito. *Montalvo v. Cruz, supra*, a la pág. 756.

El deber de cuidado incluye, tanto la obligación de anticipar, como la de evitar la ocurrencia de daños, cuya probabilidad es razonablemente previsible. El deber de anticipar y prever los daños no se extiende a todo riesgo posible. *Íd.* Lo esencial en estos casos es que se tenga el deber de prever en forma general consecuencias de determinada clase. Sobre este particular, el Tribunal Supremo de Puerto Rico, ha sido enfático al expresar que sin la existencia de este "deber de cuidado mayor" no puede responsabilizarse a una persona porque no haya realizado el acto de que se trate. *Hernández v. Televicentro*, 168 DPR 803, 813-814 (2006).

Ahora bien, el elemento de la previsibilidad se halla íntimamente relacionado al segundo requisito: el nexo causal. En Puerto Rico rige la teoría de la causalidad adecuada, la cual postula que "no es causa toda condición sin la cual no se hubiera producido el resultado, sino la que ordinariamente lo produce según la experiencia general". *Cruz Flores et al. v. Hosp. Ryder et al.*, supra, págs. 484-485. En *Rivera v. S.L.G. Díaz*, 165 DPR 408, 422 (2005), nuestro más Alto Foro señaló que la relación causal, elemento imprescindible en una reclamación en daños y perjuicios, es un

elemento del acto ilícito que vincula al daño directamente con el hecho antijurídico. *Nieves Díaz v. González Massas,* supra*,* págs. 844-845. Conforme con lo anterior, un daño podrá ser considerado como el resultado probable y natural de un acto u omisión negligente si luego del suceso, mirándolo retroactivamente, éste parece ser la consecuencia razonable y común de la acción u omisión de que se trate. *Hernández v. Televicentro*, supra, pág. 814; *Cruz Flores et al. v. Hosp. Ryder et al.,* supra, pág. 485.

Para establecer la relación causal necesaria, no es suficiente que un hecho aparente ser condición de un evento, si éste regularmente no trae aparejado ese resultado. Esta normativa ha sido fundamentalmente desarrollada con el propósito de limitar la responsabilidad civil a aquellos casos en que la ocurrencia de un hecho dañoso sea imputable moralmente a su alegado autor, porque éste era una consecuencia previsible o voluntaria del acto negligente. *Soto Cabral v. E.L.A.*, 138 DPR 298, 317 (1995).

Al aplicar el principio de la causalidad adecuada, el Tribunal Supremo de Puerto Rico expresó "que la difícil determinación de cuándo existe nexo causal entre el daño producido por un acto delictivo de un tercero y la omisión de cumplir con la obligación de tomar precauciones, medidas de seguridad y protección, no puede 'resolverse nunca de una manera plenamente satisfactoria mediante reglas abstractas, sino que en los casos de duda ha de resolverse por el juez según su libre convicción, ponderando todas las circunstancias'." *J.A.D.M. v. Centro Comercial de Plaza Carolina*, 132 DPR 785, 796 (1993).

### C. Negligencia Comparada

La segunda parte del Art. 1802 del Código Civil, establece que: "la imprudencia concurrente del perjudicado no exime de responsabilidad, pero conlleva la reducción de la indemnización". 31 LPRA ant. sec. 5141.   Lo anterior se trata de la doctrina de

negligencia comparada. H.M. Brau Del Toro, *Los Daños y Perjuicios Extracontractuales en Puerto Rico*, 2da ed., San Juan, Pubs. J.T.S., 1986. *Quiñones López v. Manzano Pozas*, 141 DPR 139, 176 (1996). Esta doctrina rige en nuestro ordenamiento jurídico y conforme a esta, la negligencia concurrente o contribuyente del demandante sirve para mitigar, atenuar o reducir la responsabilidad pecuniaria del demandado, pero no para eximirle totalmente de responsabilidad. *Íd.*; *SLG Colón-Rivas v. ELA*, 196 DPR 855, 865 (2016); *Quiñones López v. Manzano Pozas*, 141 DPR 139 (1996).

La doctrina de negligencia comparada requiere que, el tribunal, además de determinar el monto de la compensación designada a la víctima, establezca el porcentaje de responsabilidad o negligencia que le corresponda a esta última, y le reduzca la indemnización de conformidad con la distribución de responsabilidad. *SLG Colón-Rivas v. ELA*, supra, pág. 865. De esta forma, para determinar la negligencia que le corresponda a cada parte en los casos de negligencia comparada, es menester analizar y considerar los hechos y circunstancias particulares de cada caso y si ha habido una causa predominante. *Íd.* págs. 865-866; *Quiñones López v. Manzano Pozas*, supra, págs. 176. Cuando hacemos alusión a la doctrina de negligencia comparada, nos referimos a la concurrencia de culpas entre la parte demandante y la parte demandada. C.J. Irizarry Yunqué, *Responsabilidad Civil Extracontractual*, 5ta ed., San Juan, 2003, pág. 378.

**D. *Valorización de los daños y revisión de las cuantías otorgadas***

El daño constituye el menoscabo material o moral que sufre una persona, ya sea en sus bienes vitales naturales, en su propiedad o en su patrimonio, causado en contravención a una norma jurídica y por el cual ha de responder otra persona. En nuestro ordenamiento jurídico se reconoce la existencia de dos tipos de

daños: los especiales, también conocidos como "daños físicos, patrimoniales, pecuniarios o económicos, y los generales, también conocidos como "daños morales". *Nieves Díaz v. González Massas*, supra, pág. 845. La estimación de los daños es una difícil tarea que descansa en la sana discreción del juzgador que ha recibido prueba detallada sobre los daños alegados, guiado por su sentido de justicia, ante todo, porque son ellos quienes tienen un vínculo más cercano con la prueba testifical y todos los componentes que lo rodean. *Mena Pamías v. Jiménez Meléndez*, 212 DPR 758, 769 (2023); *Cruz Flores et al. v. Hosp. Ryder et al.*, supra, pág. 497; *Rodríguez v. Hospital*, 186 DPR 889, 929 (2012). Se trata de una labor compleja porque no existe un mecanismo matemático que permita, de forma certera y uniforme valorar los daños exactos que recibe una persona. *Rodríguez Cancel v. AEE*, 116 DPR 443, 451 (1985); *Mena Pamías v. Jiménez Meléndez*, pág. 769. Por tanto, la valoración de los daños siempre estará sujeta a cierto grado de especulación. *Sagardía de Jesús v. Hosp. Aux. Mutuo*, 177 DPR 484, 509, (2009).

La jurisprudencia ha buscado dar uniformidad y cerrar espacio para la arbitrariedad, utilizando comparativos al momento de establecer la compensación de los daños de una parte. Al revisar una sentencia del Tribunal de Primera Instancia que concedió daños, los foros apelativos deben considerar la prueba desfilada y concesiones otorgadas en casos similares resueltos anteriormente. A pesar de que reconocemos que cada caso es distinto y tiene circunstancias particulares, los precedentes son referencia útil para la determinación de si la compensación es exageradamente alta o ridículamente baja. *Rodríguez, et als. v. Hosp., et als.*, 186 DPR 889, 909 (2012); *Mena Pamías v. Jiménez Meléndez*, supra, pág. 770. Es por ello que los tribunales, haremos el ejercicio de mirar aquellos otros casos donde se han probado daños similares para asimismo

conceder compensaciones similares. *Escobar Galarza v. Banuchi Pons*, 114 DPR 138, 148 (1983).

Nuestro más Alto Foro ha advertido sobre la importancia de que el Tribunal de Primera Instancia detalle en sus dictámenes los casos que utilizó como referencia o punto de partida para la estimación y valoración de daños y el cómputo realizado para establecer las cuantías que se concedan. *Santiago Montañez v. Fresenius Medical*, 195 DPR 476, 493 (2016). En consecuencia, el Tribunal de Primera Instancia debe exponer de forma específica los casos similares que utilizó como referencia y el cómputo realizado para ajustar las cuantías concedidas en casos similares al valor presente. *Íd.*

Es norma reiterada que los tribunales apelativos no deben intervenir con las determinaciones de los juzgadores de primera instancia, salvo que medie pasión prejuicio, parcialidad o error manifiesto en la apreciación de la prueba. *Dávila Nieves v. Meléndez Marín*, 187 DPR 750 (2013). En los casos de daños y perjuicios, específicamente, se ha reconocido que la tarea judicial de estimar y valorar los daños resulta difícil y angustiosa porque no existe un sistema de computación que permita llegar a un resultado exacto con el cual todas las partes queden completamente complacidas. *Herrera Rivera v. S.L.G. Ramírez-Vicéns*, 179 DPR 774 (2010).

Es por lo que, los tribunales apelativos guardarán deferencia a las valorizaciones de daños que hagan los foros de primera instancia, porque son éstos los que tienen contacto directo con la prueba testifical y quedan en mejor posición para emitir un juicio. *Rodríguez, et als. v. Hosp., et als.*, supra, pág. 909; *Herrera Rivera v. S.L.G. Ramírez-Vincéns*, supra, pág. 785.

No obstante, no intervendremos con las estimaciones de daños que los tribunales de instancia realicen, salvo cuando la cuantía concedida advenga ridículamente baja o exageradamente

alta. La valoración de los daños está sujeta a un cierto grado de especulación y conlleva elementos subjetivos, tales como la discreción y el sentido de justicia y conciencia humana del juzgador de los hechos. *Íd*; *Cruz Flores et al. v. Hosp. Ryder et al.,* supra, pág. 498.

### E. Regla 44.1-Honorarios de Abogados

La concesión de honorarios de abogado está regulada por la Regla 44.1 (d) de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 44.1 (d). La misma autoriza al Tribunal a imponer honorarios de abogado cuando una parte o su abogado procede con temeridad o frivolidad. *Pérez Rodríguez v. López Rodríguez et al.*, 210 DPR 163 (2022); *SLG González-Figueroa v. SLG et al.,* 210 DPR 138 (2022). La *temeridad* se define como aquella conducta que hace necesario un pleito que se pudo evitar, que lo prolonga innecesariamente o que obliga que la otra parte incurra en gestiones evitables. *Íd*; *SLG González-Figueroa v. SLG et al.,* supra, pág. 148; *Marrero Rosado v. Marrero Rosado*, 178 DPR 476, 504 (2010). Sobre este particular, nuestro más Alto Foro ha expresado también que "[l]a temeridad es una actitud que se proyecta sobre el procedimiento y que afecta el buen funcionamiento y la administración de la justicia." *Jarra Corp. v. Axxis Corp.*, 155 DPR 764, 779 (2001).

Por otro lado, la frivolidad se define como "aquello que no tiene razón de ser, sin méritos, sin peso ni lógica alguna." *Depto. Rec. v. Asoc. Rec. Round Hill*, 149 DPR 91, 100 (1999). Sólo lo claramente irrazonable o inmeritorio debe dar paso a una determinación de frivolidad por un tribunal apelativo. *Íd.*

En Feliciano *Polanco v. Feliciano González,* 47 DPR 722, 730 (1999), el Tribunal Supremo de Puerto Rico indicó que "[a] modo de ejemplo, constituyen actos temerarios los siguientes:

> [c]uando el demandado contesta la demanda y niega su responsabilidad total, aunque la acepte posteriormente; cuando se defiende injustificadamente de la acción que

se presenta en su contra; cuando no admite francamente su responsabilidad limitada o parcial, a pesar de creer que la única razón que tiene para oponerse a la demanda es que la cuantía es exagerada; cuando se arriesga a litigar un caso del que prima facie se desprende su negligencia; o cuando niega un hecho que le consta ser cierto."

El propósito de la imposición de honorarios de abogado en casos de temeridad es "establecer una penalidad a un litigante perdidoso que por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconveniencias de un pleito." *Andamios de PR v. Newport Bonding*, 179 DPR 503, 520 (2010); *Pérez Rodríguez v. López Rodríguez*, supra, pág. 193; *SLG González-Figueroa v. SLG et al.*, supra, págs. 148-149; *Fernández v. San Juan Co.*, Inc., 118 DPR 713, 718 (1987).

Además, la imposición de honorarios de abogado, tiene como objetivo disuadir la litigación innecesaria y alentar las transacciones mediante la imposición de sanciones a la parte temeraria para compensar los perjuicios económicos y las molestias sufridas por la otra parte. *Fernández v. San Juan Cement Co., Inc.*, 118 DPR 713, 718-719 (1987). Nuestro más Alto Foro ha dispuesto que, la facultad de imponer honorarios de abogados es la mejor arma que ostentan los tribunales para gestionar de forma eficaz los procedimientos judiciales y el tiempo de la administración de la justicia, así como para proteger a los litigantes de la dilación y los gastos innecesarios. *SLG González-Figueroa v. SLG et al.*, supra, pág. 149.

La determinación sobre si una parte ha procedido con temeridad descansa en la sana discreción del tribunal sentenciador y no será variada en apelación a menos que se demuestre que éste ha abusado de su discreción. *Pérez Rodríguez v. López Rodríguez*, supra, pág. 193; *SLG González-Figueroa v. SLG et al.*, supra, pág.

150.    Tampoco será variada la partida concedida a menos que resulte ser excesiva, exigua o constituya un abuso de discreción. *Feliciano Polanco v. Feliciano González,* supra, a las págs. 728-729.

Expuesta la normativa jurídica que enmarca la controversia de epígrafe, procedemos a aplicarla.

**III**

Como primer señalamiento de error, la parte apelante sostiene que, el Tribunal de Primera Instancia incidió al concluir que el señor Rodríguez Vázquez fue negligente.

En su segundo señalamiento de error, AGSM alega que, en la alternativa, el foro primario se equivocó al concluir que el señor Rodríguez Vázquez no incurrió en negligencia comparada.

Por encontrarse intrínsecamente relacionados, discutiremos los señalamientos de error de forma conjunta. Adelantamos que, no le asiste la razón. Veamos.

Según se desprende del expediente y de las determinaciones de hechos, el 2 de junio de 2014, el señor Torres Velázquez se disponía a cruzar la Calle José Gotay en Peñuelas, cuando fue impactado por un camión marca Chevrolet, Mod. Step Van, Año 2002, Tab. 729-778, conducido por el señor Rodríguez Vázquez. Como consecuencia de dicho accidente, el señor Torres Velázquez sufrió una lesión en el hombro izquierdo.

Conforme el derecho reseñado, el derogado artículo 1802 del Código Civil de 1930, dispone que "el que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado".[4] La culpa o negligencia ha sido definida como falta de cuidado, lo que es, no anticipar ni prever las consecuencias racionales de un acto, o de la omisión de un acto,

---

[4] 31 LPRA ant. sec. 5141

que una persona prudente habría de prever en tales circunstancias.[5] Nuestro ordenamiento jurídico ha hecho énfasis en que, un *elemento esencial* de la responsabilidad civil extracontractual es el factor de la *previsibilidad.* El deber de previsión no se extiende a todo riesgo posible, pues, es necesario examinar si un daño pudo ser el resultado natural y probable de un acto negligente.[6] Con el propósito de determinar si el resultado era razonablemente previsible, nos corresponde acudir a la figura del hombre prudente y razonable, que es aquella persona que actúa con el grado de cuidado, diligencia, vigilancia y precaución que exigen las circunstancias.[7] Si el daño es previsible por este, hay responsabilidad, si no lo es, nos encontramos generalmente ante un caso fortuito.[8]

Cabe señalar que, el elemento de previsibilidad se halla íntimamente relacionado al segundo requisito: nexo causal. En nuestra jurisdicción, rige la teoría de la causalidad adecuada, la cual postula que "no es causa toda condición sin la cual no se hubiera producido el resultado, sino la que ordinariamente lo produce según la experiencia general".[9]

De las determinaciones de hechos esbozadas por el Tribunal de Primera Instancia surge que, el señor Rodríguez Vázquez se disponía a realizar una entrega de mercancía mientras conducía su camión por la Carretera 383, vía que es perpendicular a la Calle José Gotay de Peñuelas. Dicha vía, cuenta con dos carriles con tránsito hacia ambas direcciones. Se desprende del testimonio del señor Rodríguez Vázquez que, este decidió conducir su camión en reversa por la Calle José Gotay.[10] Mientras manejó su camión en reversa, este impactó al señor Torres Velázquez. Sobre lo anterior, el señor

---

[5] *Montalvo v. Cruz*, supra, pág. 755.
[6] *Cruz Flores et al. v. Hosp. Ryder et al.*, supra, pág. 484.
[7] *Nieves Díaz v. González Massas, supra*, pág. 844.
[8] *Montalvo v. Cruz, supra*, a la pág. 756.
[9] *Cruz Flores et al. v. Hosp. Ryder et al.*, supra, págs. 484-485.
[10] TPO de 24 de abril de 2023, pág. 56, líneas 17-23.

Rodríguez Vázquez atestiguó que, no había visto al señor Torres Velázquez antes de impactarlo, a pesar de estar mirando por los retrovisores. Indicó que, no logró verlo en ningún momento debido a que el camión tenía puntos ciegos y no tenía cámara de reversa.[11] De igual forma, reconoció que tenía conocimiento de que su camión tenía un punto ciego, puesto que todos los camiones lo tienen.[12] Respecto a sus acciones, el señor Rodríguez Vázquez testificó lo siguiente:

> P    [...] ¿Cuando usted da reversa, usted da reversa derecho hacia atrás o usted está cogiendo la curva?
>
> R    Cogiendo la curva.
>
> P    Correcto. O sea, que este punto ciego se mueve ¿correcto? ¿Correcto? ¿Verdad?
>
> R    Es correcto.
>
> P    O sea, que el punto ciego al momento de darle, del impacto no es el punto ciego de antes de estar dando reversa, de cuando usted comenzó a dar reversa, ¿correcto?
>
> R    Es correcto.
>
> P    ¿Son diferentes?
>
> R    Eso es correcto.
>
> P    ¿Y usted pudo haber virado, cuando estaba perpendicular? ¿Usted estaba parado perpendicular era como. . .? Estaba cuando. . . Antes de dar reversa, usted estaba perpendicular a la manera que estaba cuando impactó al señor Ervin, ¿correcto?
>
> R    Sí.[13]
>
> [...]
>
> P    [...] ¿Usted siempre da retroceso? ¿Cuando va a entregar mercancía siempre hace esa, esa maniobra? ¿Se estaciona ahí y después va en retroceso hacia atrás para coger la curva?
>
> R    No siempre. Cuando sea necesario.
>
> P    ¿Y por qué ese día fue necesario?

---

[11] TPO de 24 de abril de 2023, pág. 69. líneas 16; pág. 70, líneas 1-2.
[12] TPO de 24 de abril de 2023, pág. 70, líneas 14-25; pág. 71, líneas 1-22.
[13] TPO de 24 de abril de 2023, pág. 72, líneas 8-25.

R porque iba, iba al. . . iba a virar hacia atrás. Yo. . . ¿Cómo lo explico? Yo iba en dirección hacia, hacia al. . . hacia abajo después de la plaza y entonces, yo iba hacia atrás otra vez, pues entonces viré porque tenía que ir a atender otro cliente que estaba a. . . Iba, iba a atender otro cliente que estaba en la parte posterior de esa calle y viré. Hice un viraje ahí.

P Y, y usted pudo. . . ¿Pero usted pudo haber virado de otra manera, ¿verdad que sí? ¿Es correcto que usted pudo haber virado de otra manera?

R No, no, puedo.

P ¿No puede coger y virar en otro sitio para entonces venir derecho de frente?

R Posiblemente.

P ¿Posiblemente, lo podría hacer?

R Posiblemente.[14]

Basado en el elemento de previsibilidad y la figura del hombre prudente y razonable, el señor Rodríguez Vázquez no actuó conforme a dichos estándares, puesto que, debió conocer que, el hecho de que condujera el camión en reversa podía tener como consecuencia – nexo causal – un accidente, tal como sucedió en el caso de epígrafe. El señor Rodríguez Velázquez tenía la obligación de anticipar y evitar la ocurrencia de daños, cuya probabilidad era razonablemente previsible. Por tanto, el señor Rodríguez Velázquez fue negligente, conforme resolvió el foro apelado.

Por otro lado, en cuanto a la negligencia comparada, dicha doctrina emana de la segunda parte del artículo 1802 del derogado Código Civil de 1930, el cual establece que "la imprudencia concurrente del perjudicado no exime de responsabilidad, pero conlleva la reducción de la indemnización".[15] Conforme a la doctrina de negligencia comparada, la negligencia concurrente o contribuyente del demandante sirve para mitigar, atenuar o reducir la responsabilidad pecuniaria del demandado, pero no para eximirle

---

[14] TPO de 24 de abril de 2023, pág. 77, líneas 4-25.
[15] 31 LPRA ant. sec. 5141.

totalmente de responsabilidad.[16] Para determinar la negligencia que le corresponda a cada parte en los casos de negligencia comparada, es menester analizar y considerar los hechos y circunstancias particulares de cada caso y si ha habido una causa predominante.[17]

De los testimonios de las partes no surge que, el señor Torres Velázquez fuera negligente de forma alguna. Puesto que, el señor Torres Velázquez se dispuso a cruzar la carretera por el área designada para así hacerlo, en específico, bajó por la rampa de impedidos que lo dirigía al cruce de peatones hasta la otra rampa.[18] Sin embargo, del testimonio del señor Rodríguez Vázquez, queda claro que este fue negligente al conducir el camión en reversa sin tomar las debidas precauciones por un área designada al paso de peatones.

Luego de una minuciosa evaluación de la totalidad de la prueba presentada que surge del expediente, determinamos que no quedó demostrado que el foro primario haya actuado mediando error manifiesto, pasión, prejuicio o parcialidad al evaluar a los testigos y la prueba que tuvo ante sí. Las determinaciones de hechos esbozadas por el Tribunal de Primera Instancia encuentran cómodo asilo en la prueba desfilada. Asimismo, la parte apelante no presentó prueba convincente que lograra controvertir dichas determinaciones de hechos.

Como tercer señalamiento de error, la parte apelante aduce que, el foro de primera instancia incidió al conceder una compensación en daños exagerada y desproporcionada.

Nos argumenta la parte apelante que, los daños concedidos a la parte apelada por el foro primario son excesivos. Aduce que, el

---

[16] *Quiñones López v. Manzano Pozas*, supra, pág. 176; *SLG Colón-Rivas v. ELA*, supra, pág. 865.

[17] *SLG Colón-Rivas v. ELA*, supra, págs. 865-866; *Quiñones López v. Manzano Pozas*, supra, págs. 176.

[18] TPO de 25 de abril de 2023, pág. 142, líneas 18-25; pág. 143, líneas 1-14, pág. 145, líneas 19-24.

foro primario erróneamente le adjudicó un siete por ciento (7%) de incapacidad general como consecuencia del accidente. No nos convence.

Respecto a la valoración de los daños, tal como mencionamos en el derecho previamente esbozado, nuestra Alta Curia ha señalado que se trata de una labor compleja porque no existe un mecanismo matemático que permita, de forma certera y uniforme valorar los daños exactos que recibe una persona.[19] Por tanto, la valoración de los daños siempre estará sujeta a cierto grado de especulación.[20]

Por tal razón, la jurisprudencia ha buscado dar uniformidad y cerrar espacio para la arbitrariedad, utilizando comparativos al momento de establecer la compensación de los daños de una parte. Al revisar una sentencia del Tribunal de Primera Instancia que concedió daños, los foros apelativos deben considerar la prueba desfilada y concesiones otorgadas en casos similares resueltos anteriormente. A pesar de que se ha reconocido que cada caso es distinto y tiene circunstancias particulares, los precedentes son referencia útil para la determinación de si la compensación es exageradamente alta o ridículamente baja. *Rodríguez, et als. v. Hosp., et als.*, supra, pág. 909; *Mena Pamias v. Jiménez Meléndez*, supra, pág. 770. Es por ello que los tribunales, haremos el ejercicio de mirar aquellos otros casos donde se han probado daños similares para asimismo conceder compensaciones similares.

De acuerdo a los hechos procesales de este caso, el señor Rodríguez Vázquez impactó con su camión al señor Torres Velázquez, y le causó varias lesiones. En específico, una fractura en el brazo/hombro izquierdo que requirió múltiples secciones de terapia física.[21]

---

[19] *Rodríguez Cancel v. AEE*, supra, pág. 451; *Mena Pamias v. Jiménez Meléndez*, supra, pág. 669.

[20] *Sagardía de Jesús v. Hosp. Aux. Mutuo*, supra, pág. 509.

[21] TPO de 24 de abril de 2023, pág. 175, líneas 1-8; 13-22; pág. 179, líneas 12-24; pág. 187, líneas 24-25; pág. 192, líneas 16-25.

Por otro lado, el doctor Grovas Badrena atestiguó que, luego de evaluar al señor Torres Vázquez, pudo concluir que este sufrió una fractura del húmero proximal.[22] Para llegar a su evaluación y conclusiones, el doctor Grovas Badrena utilizó las Guías para Evaluación de Impedimento Permanente de la Asociación Médica Americana, Sexta Edición. Así como un estudio radiológico realizado al señor Torres Vázquez.[23] De igual manera, explicó que, para evaluar el arco de movimiento del hombro lesionado, realizó una comparación entre el hombro derecho no lesionado y el hombro izquierdo lesionado. A base de la evaluación y conforme a las Guías de Evaluación, determinó que, el señor Torres Vázquez tenía once por ciento (11%) de impedimento en su extremidad superior izquierdo.[24] Para evaluar el por ciento de las funciones fisiológicas generales, el doctor Grovas Badrena utilizó un método propuesto por las Guías de Evaluación y concluyó que, el señor Torres Vázquez contaba con un siete por ciento (7%) de impedimento en sus funciones generales fisiológicas.[25] Como consecuencia de lo anterior, el señor Torres Vázquez no recobrará el movimiento completo en el hombro y tiene impedimento permanente.[26]

Cabe señalar que, durante el juicio, la juzgadora de hechos pudo evaluar un ejercicio llevado a cabo en la *Vista en su Fondo*, donde la parte apelada realizó varios movimientos con sus extremidades superiores. El señor Torres Velázquez pudo extender y subir su brazo derecho completamente, pero, no logró mover igual su brazo izquierdo.

La primera instancia judicial le mereció entero crédito al informe del doctor Grovas Badrena, y adoptó las recomendaciones presentadas en este junto al por ciento de impedimento permanente

---

[22] TPO de 26 de abril de 2023, pág. 21, líneas 5-9; 15-15.
[23] TPO de 26 de abril de 2023, pág. 23, líneas 2-5.
[24] TPO de 26 de abril de 2023, pág. 28, líneas 1-22.
[25] TPO de 26 de abril de 2023, pág. 28, líneas 23-25; pág. 29, líneas 1-5
[26] TPO de 26 de abril de 2023, pág. 29, líneas 6-12.

otorgado. En específico, el siete por ciento (7%) de impedimento general en sus funciones fisiológicas.

En su *Sentencia*, el foro *a quo*, consignó haber utilizado caso de *Janet Colón v. Kmart*, 154 DPR 510 (2001), como referencia para realizar el ejercicio valorativo sobre los daños físicos sufridos por el señor Torres Velázquez. El foro primario explicó que, en el mencionado caso la parte perjudicada no sufrió fractura, no recibió terapias ni requirió tratamiento, aunque se le adjudicó un cuatro por ciento (4%) de impedimento de sus funciones generales y una partida de sesenta mil dólares ($60,000.00) en concepto de daños. Asimismo, utilizó como referente el caso *Goose v. Hilton Hotel International, Inc.*, 79 DPR 523 (1956), donde a la parte demandante se le otorgó una suma de $7,500 por los daños sufridos al caerse de unas escaleras del Hotel. Luego de realizar el ejercicio correspondiente, conforme a las exigencias de nuestro Máximo Foro, el Tribunal de Primera Instancia determinó que, procedía el pago de una partida de noventa mil dólares ($90,000.00) a favor del señor Torres Velázquez, por razón de daños físicos y una partida de treinta mil dólares ($30,000.00) por sufrimientos y angustias mentales.

A pesar de que la parte apelante considera que las sumas concedidas son excesivas, lo cierto es que no hizo referencia a ningún caso en particular, que pudiera utilizarse como referente, a los fines de modificar las cuantías concedidas. Únicamente se limitó a argumentar que el por ciento de incapacidad otorgado no era el correcto y que la cuantía fue excesiva tomando en consideración el tiempo transcurrido desde el accidente. Debido a tal omisión, la parte apelante no nos puso en posición de intervenir con el dictamen del foro apelado, el cual merece nuestra deferencia.

En su último señalamiento de error, la parte apelante sostiene que, el foro apelado erró al concluir que fue temeraria y

consecuentemente imponer intereses por temeridad y una partida de $3,000.00 por concepto de honorarios de abogado.

Como es sabido, la imposición de honorarios de abogados recae en la sana discreción del tribunal sentenciador. Examinado el expediente ante nuestra consideración, no podemos concluir que la actuación del foro de primera instancia constituyó un abuso de su discreción que amerite nuestra intervención con la imposición de honorarios de abogado. Consecuentemente, el error antes señalado no fue cometido por el Tribunal de Primera Instancia.

**IV**

Por los fundamentos que anteceden, se confirma la *Sentencia* apelada.

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones